[No. 17083-3-II.   Division Two.   August 31, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE CURTIS CARTER, *Appellant*.

*Dino G. Sepe of Department of Assigned Counsel*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

SEINFELD, C.J. — Eugene Carter appeals his conviction of possession of a controlled substance. He contends that the search warrant upon which the police relied to search his person violated the Fourth Amendment requirement of particularity. The warrant authorized the search of "persons at the residence" at issue, but did not name or describe Carter. We reverse.

## FACTS

After receiving numerous complaints about drug activ-

ity at an apartment on South L Street in Tacoma, the police sent a confidential informant to the premises to observe. The informant reported seeing residents using and selling rock cocaine and many people entering and leaving the apartment for the purpose of buying, selling, and using drugs. The informant was unable to identify any of the people "he/she" observed by name. For further verification, Officers Zeutschel and Richland conducted a surveillance of the location and they, too, observed an unusually high number of people entering and leaving the apartment.

Officer Zeutschel obtained a search warrant, relying only on the informant's observations. Her complaint stated, in pertinent part:

> Within the last seventy-two hours, your affiant was contacted by a confidential and reliable informant who stated that within the same seventy-two hour period, he/she had been inside of 824 South "L", apartment #1, in the city of Tacoma . . . and observed ROCK COCAINE being not only sold but used by the residents of the apartment and other unknown individuals inside the apartment. The said informant also observed numerous unknown individuals arrive at the target apartment and purchase ROCK COCAINE from not only the residents but also from other individuals who came and went from the said apartment concealing the ROCK COCAINE on their person(s) while the said informant was inside the apartment.[1]

The warrant authorizes a search of the residence and of all "persons at the residence at the time the warrant i[s] being served as well as persons arriving and leaving the residence at the time the warrant is being executed for controlled substances and papers of identification."

Two days later, Officer Lowry and other police executed the warrant. They discovered an apartment in disarray — garbage and moldy food strewn about, plumbing not functioning, an empty refrigerator, and gang graffiti

---

[1]Carter failed to designate the Complaint for Search Warrant and the Search Warrant as clerk's papers in his appeal. But both parties attached them as appendices to their briefs.

decorating the walls. Officer Lowry discovered Carter, whom he knew from previous drug contacts and arrests, asleep on a mattress on the living room floor. The officers also encountered three other persons in the living room, including Carter's daughter, who had been asleep on the mattress with Carter.

Upon searching Carter, Officer Lowry found a piece of rock cocaine in Carter's pants pocket. The officers also found another piece of rock cocaine, along with assorted drug paraphernalia, on top of a stereo cabinet in the living room. The record does not state which event occurred first.

Before his trial on the charge of possession of a controlled substance, Carter moved to suppress the evidence seized as a result of the search. He argued that, as applied to him, the search warrant did not meet the Fourth Amendment requirements of particularity and probable cause.

Officer Lowry testified at the suppression hearing that he searched Carter for weapons and drugs but did not believe that Carter was armed or dangerous. He also said that Carter had told the officers that he resided at the apartment. The trial court concluded that the warrant was constitutionally valid; consequently, it denied Carter's motion.

At trial, Carter stipulated to the police reports, and the court found him guilty as charged. The sole issue on appeal is whether a facially valid warrant authorizing police to search a residence and all persons present when the warrant is executed is sufficient to meet the particularity requirements of the Fourth Amendment.[2]

### ANALYSIS

■ The Fourth Amendment, enforceable against the

---

[2]Carter does not challenge under Article I, Section 7 of our Constitution, nor did he brief the *Gunwall* factors required for challenges made under the State Constitution. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

States through the due process clause of the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched, and *the persons* or *things to be seized.*

(Emphasis added.) To establish probable cause, the affiant must satisfy the magistrate that there are sufficient facts from which a reasonable person could conclude there is a probability that the persons to be subjected to search are involved in the criminal activity. *State v. Cord*, 103 Wn.2d 361, 365-66, 693 P.2d 81 (1985). In other words, there must be a sufficient nexus between the targets of the search and the suspected criminal activity. Although on review, we give great deference to a judicial determination of probable cause, nonetheless, an affidavit must contain some underlying facts or circumstances from which a magistrate can find probable cause. *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).

Carter challenges neither the sufficiency of the affidavit nor the magistrate's determination of probable cause to search the L Street apartment; he challenges only the particularity requirement as it applies to searching him. In seeking affirmance, the State presents three alternative arguments. First, citing Professor Wayne R. LaFave, it argues that we should approve warrants for all persons present where "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant." 2 Wayne R. LaFave, *Search and Seizure* § 4.5(e) (2d ed. 1987) (quoting *State v. De Simone*, 60 N.J. 319, 322, 288 A.2d 849 (1972). Secondly, citing *State v. Halverson*, 21 Wn. App. 35, 584 P.2d 408 (1978), the State asks us to bifurcate the warrant and uphold the portion allowing the search of the premises. It then asks us to conclude that the circumstances provided reasonable cause to believe that Carter had drugs upon his person. Finally,

the State asks us to consider a theory not argued below, that this was a lawful search incident to Carter's arrest for constructive possession of the drugs on the stereo. We examine each theory in turn.

## A
### "Search All Persons Present" Warrants

Although some states have approved the use of "search all persons present" warrants, they limit this use to situations where the evidence "tendered to the issuing magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence of the criminal activity on his person." *Stokes v. State,* 604 So. 2d 836, 838, *review denied,* 613 So. 2d 9 (Fla. 1992) (citing *Ybarra v. Illinois,* 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)); *see also* LaFave, *supra,* § 4.5(e); *De Simone, supra* (particularity requirements satisfied for warrant authorizing search of identified vehicle and all persons found therein, based on showing that the vehicle had been observed participating in floating lottery "drop"). *Willis v. State,* 122 Ga. App. 455, 177 S.E.2d 487 (1970) (warrant authorizing search of designated apartment, its tenants and any other person on the premises who might reasonably be involved in the commission of the specified crime not general warrant because supported by sufficient indicia of probable cause).

The rationale in support of such warrants is that the "place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense." *De Simone,* 60 N.J. at 322. Thus, there is a well-grounded suspicion not only of criminal activity, but of involvement in that activity by all individuals present. *De Simone,* 60 N.J. at 322. "So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *De Simone,* 60 N.J. at 322. *See also State v. Hinkel,* 365

N.W.2d 774, 775-76 (Minn. 1985) (nighttime search of patron on premises of illegal "afterhours joint" pursuant to warrant authorizing search of "all persons present" upheld; "sufficient nexus between the criminal activity, the place of the activity, and the persons in the place to show probable cause").

In disapproving such warrants, other courts have focused on the requirement that there be a nexus connecting all persons present to the activity and the place. *See State v. Robinson,* 371 N.W.2d 624, 626 (Minn. Ct. App. 1985) (invalidated search of bar patron pursuant to warrant targeting bar as a site of illegal drug activity and executed on a Friday afternoon; not likely that all the persons present in a bar during daytime hours would be engaged in illegal drug activity and, thus, showing of nexus inadequate); *State v. Jamison,* 482 N.W.2d 409, 412-13 (Iowa 1992) (search pursuant to "all persons and vehicles present" warrant improper because inadequate showing of nexus between defendant or his vehicle and existence of criminal activity at targeted premises; defendant not alleged to be regular visitor or occupant of the residence, nor had his car even been seen on the premises); *State v. Rollie M.,* 41 Wn. App. 55, 56, 701 P.2d 1123 (1985) (where affidavit stated only that marijuana had been seen on the premises, warrant permitting officers to search the premises and "search the person(s) of *John Doe* who is known to be in the vicinity of the above described premises" invalid to search a minor who lived at the premises and entered at time warrant being served).

The State of Oklahoma flatly condemns "all persons present" search warrants, relying on its state constitution and the federal constitution. *Crossland v. State,* 266 P.2d 649 (Okla. Crim. App. 1954). We recently stated that a generalized reasonable belief that all persons present are connected to criminal activity is not sufficient to establish a nexus. *State v. Rivera,* 76 Wn. App. 519, 888 P.2d 740 (1995) (citing *Ybarra, supra*). "[I]ndividualized probable cause is a prerequisite to an evidence search of any person

on the premises." *Rivera*, 76 Wn. App. at 524 (citing *Ybarra*, 444 U.S. at 94).

Assuming, without deciding, that "all persons present" warrants can pass muster in this jurisdiction if supported by a showing of the necessary nexus between all persons present, the place, and the criminal activity, in this case that nexus is absent. Zeutschel's complaint says only that the informant had witnessed people in the apartment engaging in illegal drug activity, and that it was apparent that the apartment was being used for the purpose of trafficking in narcotics. Although this supports the conclusion that some persons on the premises are engaged in illegal activity, it does not support the conclusion that only illegal conduct occurs on the site, and that therefore any person present is likely to be "involved in the criminal activity in such a way as to have evidence of the criminal activity on his person." *Stokes*, 604 So. 2d at 838. Thus, the warrant here did not support the search of Carter's person.

█ The State points to the apartment's physical condition as observed by the officers when they entered as evidence that the apartment housed an illicit drug business, not a residence. It argues that a reasonable inference is that people entered there for one purpose only — to buy, sell, and use illegal drugs — and, thus, it is highly improbable that innocent persons would casually wander into the apartment and become subject to search, as did the patrons of the bar in *Robinson*. We need not decide here whether the description of the condition of the apartment would allow this inference as this information was not before the magistrate. Thus, it cannot support the warrant. *State v. Condon*, 72 Wn. App. 638, 642, 865 P.2d 521 (1993), *review denied*, 123 Wn.2d 1031 (1994).

## B

### Sever Warrant

Where a search warrant separately and distinctly describes two targets, here a person and a place, and part

of it is later determined to be defective, the court may treat the warrant as severable and uphold it as to the remaining valid target. *Halverson*, 21 Wn. App. at 37. In its second argument, the State asks us to recognize the validity of the portion of the warrant authorizing the premises search.

As Carter does not challenge the premises portion of the warrant and we see no defect, we assume the search of the L Street apartment was valid. The State contends that once the officers were in the apartment, the circumstances themselves provided probable cause to believe that "the articles for which the search [was] instituted [were] upon [Carter's] person." *Halverson*, 21 Wn. App. at 38. We do not find this argument persuasive.

█ The facts here are distinguishable from *Halverson* and do not provide probable cause. At the time of the search, Halverson was kneeling in front of a table with scales on it. Halverson stood up with both hands closed in fists. The police ordered him to open his hands to see if he had a weapon, and instead they found drugs. The reviewing court agreed that there was probable cause to conduct a *Terry* frisk.[3]

Here, Carter was asleep. The State has pointed to nothing in the record that provided a basis for searching Carter, other than the warrant itself. In fact, the officers testified that they did not believe Carter was armed and dangerous. Thus, the *Halverson* rationale is not applicable here.

## C

### Search Incident to Arrest

Finally, the State seeks to justify the search by resorting to the piece of rock cocaine found on the stereo, suggesting that the police inevitably would have discovered it, providing probable cause to arrest Carter. The arrest then would justify the search as incident to the arrest. *See State v. Cottrell*, 86 Wn.2d 130, 542 P.2d 771 (1975).

---

[3]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

■ The State is raising this alternative theory for the first time on appeal; this is a fatal defect. As a general rule, the appellate court will not consider an issue not raised below. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Even were we to make an exception to that rule, the trial court neither found that the officers inevitably would have discovered the drugs on the stereo nor that Carter was in constructive possession of the cocaine on the stereo.

To prove unlawful possession of a controlled substance, the State may rely on evidence of either actual possession or constructive possession, both of which provide probable cause for arrest. *State v. Bradford*, 60 Wn. App. 857, 862, 808 P.2d 174, *review denied*, 117 Wn.2d 1003 (1991); *State v. Broadnax*, 98 Wn.2d 289, 302, 654 P.2d 96 (1982); *State v. Douglas S.*, 42 Wn. App. 138, 141, 709 P.2d 817 (1985). The law deems persons in dominion and control over premises where unlawful controlled substances are found to be in constructive possession of them. *Broadnax*, 98 Wn.2d at 302; *Douglas S.*, 42 Wn. App. at 141.

Here, the State points to the fact that Carter admitted being a resident of the apartment. But, because the State failed to argue constructive possession below, Carter did not have an opportunity to present evidence or argument as to why this theory is not applicable here. As an appellate court, we will not make a finding of constructive possession to buttress an argument that the State failed to make below. Accordingly, we reject the State's alternative argument that this was a lawful search incident to Carter's arrest for constructive possession of the drugs on the stereo. *See Cottrell, supra.*

We reverse the order denying suppression and the judgment of conviction and remand for further proceedings consistent with this decision.

WIGGINS and FLEISHER, JJ., concur.