106 P.3d 832 (2005)
STATE of Washington, Respondent,
v.
BRADLEY William McCORD, Appellant.
No. 22589-5-III.
Court of Appeals of Washington, Division 3, Panel Nine.
February 15, 2005.
*833 Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
Kevin G. Eilmes, Attorney at Law, Yakima, WA, Respondent.
KATO, C.J.
Bradley McCord was convicted of unlawful possession of a firearm. Claiming the search warrant and the supporting affidavit were *834 defective, items seized exceeded the scope of the warrant, his statements to the police were not voluntary, and the evidence did not support his conviction, Mr. McCord appeals. Because the supporting affidavit was deficient, we reverse.
Daniel Runion Jr. was accused of stealing a gun. His wife and father tried to retrieve the gun in an effort to get leniency on the charges against him. On June 30, 2003, they went to see Mr. McCord, an individual they knew as "Cosmo," at 1318 Browne Ave. No. 6 in Yakima. Mr. McCord did not have the gun, but said he could get it.
On July 1, 2003, Ms. Runion and her father-in-law talked to the Yakima Police Department. A detective gave Ms. Runion $200. She and her father-in-law returned to the apartment.
Ms. Runion gave the $200 to Mr. McCord and he gave her a watch as collateral. He was then going to get the gun for her.
While the Runions were in the apartment, surveillance officers saw a white female enter the apartment. Daniel Runion Sr. later told detectives he saw a white female tell Mr. McCord she wanted "some shit." Clerk's Papers (CP) at 82. Mr. McCord gave her a clear plastic bag and she gave him some money.
After the Runions left, the surveillance officers saw Mr. McCord leave. After speaking with the Runions, the detective had Mr. McCord arrested. A warrant check revealed he was a convicted felon.
Upon the arrest, a detective read Mr. McCord his Miranda[1] rights. He told the detective he was going to recover a gun for a friend. Mr. McCord also said there was a gun in the apartment under the mattress.
Later that day, the police applied for and obtained a search warrant for the apartment on Browne Avenue. The affidavit detailed what the Runions had seen: individuals smoking marijuana as well as other drug paraphernalia. The officer also noted that the term "shit" is commonly used to mean drugs. CP at 82. A warrant was issued and authorized a search for "Marijuana, Drug Paraphernalia, other Narcotics, and materials associated with the sale and distribution of narcotics." CP at 84. Upon execution of the warrant, officers found under the mattress in the bedroom, a revolver near a notebook bearing the name "Cosmo." Report of Proceedings (Sept. 3, 2003) at 7.
The State charged Mr. McCord with unlawful possession of a firearm. He challenged the warrant's validity and moved to suppress evidence discovered during the search as well as his statements. His motions were denied. The jury convicted him as charged. This appeal follows.
Mr. McCord first challenges the validity of the search warrant. A search warrant may issue for probable cause when a magistrate can reasonably infer from the facts and circumstances that criminal activity is occurring or contraband exists at a certain location. In re Pers. Restraint of Yim, 139 Wash.2d 581, 594, 989 P.2d 512 (1999). Probable cause is governed by the probability of criminal activity. Id. at 594-95, 989 P.2d 512 (citing State v. Seagull, 95 Wash.2d 898, 907, 632 P.2d 44 (1981)). The determination that probable cause exists is given great deference and the decision to issue a warrant is reviewed for abuse of discretion. Yim, 139 Wash.2d at 595, 989 P.2d 512. Any doubts relating to the existence of probable cause will be resolved in favor of the warrant. Id.
Here, the officers applied for a search warrant based in part on information given to them by the Runions. When the existence of probable cause depends on information supplied by an informant, the two-prong Aguilar-Spinelli[2] test must be satisfied. State v. Cole, 128 Wash.2d 262, 287, 906 P.2d 925 (1995). The knowledge prong requires that the basis of the informant's information be established. The credibility prong requires that the reliability of the informant be established. Independent police investigation that corroborates more than public or *835 innocuous facts in the informant's tip may cure a deficiency in either prong. Id.
Information that the informant personally saw the facts asserted and is passing on firsthand information satisfies the basis of knowledge prong. State v. Duncan, 81 Wash.App. 70, 76, 912 P.2d 1090, review denied, 130 Wash.2d 1001, 925 P.2d 988 (1996). The court here determined that the warrant was proper based only upon the Runions' description of the transaction between Mr. McCord and a female visitor. This description satisfies the basis of knowledge prong.
The veracity prong is satisfied by showing the credibility of the informant or by establishing that the facts and circumstances surrounding the furnishing of the information support an inference the informant is telling the truth. State v. Lair, 95 Wash.2d 706, 710, 630 P.2d 427 (1981). When the informant is an ordinary citizen rather than a criminal or professional informant and his identity is revealed to the issuing magistrate, intrinsic indicia of his reliability may be found in his detailed description of the underlying circumstances of what he observed. State v. Northness, 20 Wash.App. 551, 557, 582 P.2d 546 (1978). But merely naming a person is an insufficient basis to determine reliability; it is only one factor to be considered. Duncan, 81 Wash.App. at 78, 912 P.2d 1090.
The Runions were named citizen informants. The requirements to establish their credibility are therefore relaxed. But there is nothing more than simply their identities that is listed in the affidavit supporting the warrant. This alone does not support a finding of reliability. The court improperly concluded the Runions were reliable based upon their status as named citizen informants.
If the affidavit fails to satisfy either prong, however, corroboration of the informant's tip with information discovered through an independent police investigation may cure the deficiency. State v. Taylor, 74 Wash.App. 111, 116, 872 P.2d 53, review denied, 124 Wash.2d 1029, 883 P.2d 327 (1994). In order for the police investigation to suffice, the information discovered must suggest "`probative indications of criminal activity along the lines suggested by the informant.'" State v. Jackson, 102 Wash.2d 432, 438, 688 P.2d 136 (1984) (quoting United States v. Canieso, 470 F.2d 1224, 1231 (2d Cir.1972)). The investigation must also verify more than innocuous facts. State v. Huft, 106 Wash.2d 206, 210, 720 P.2d 838 (1986).
The police here corroborated that a white female entered the apartment while the Runions were present. But this is an innocuous fact. The investigation did not cure the defect in showing the Runions' reliability. Because the warrant was improperly issued, the court should have suppressed the evidence. See State v. Anderson, 105 Wash.App. 223, 229, 19 P.3d 1094 (2001).
Claiming his arrest was invalid, Mr. McCord also challenges the court's denial of the motion to suppress his statements to the police. The police arrested Mr. McCord based upon information given to them by the Runions. When an informant supplies the information that gives rise to probable cause to arrest, however, the Aguilar-Spinelli test applies. State v. Gaddy, 152 Wash.2d 64, 71, 93 P.3d 872 (2004). As indicated before, the veracity prong of this test cannot be satisfied. Because the informants' veracity was not established, the police did not have the authority to arrest Mr. McCord. RCW 10.31.100.
A statement made after an illegal arrest is only admissible if it was obtained "`by means sufficiently distinguishable to be purged of the primary taint'" and not through "`exploitation of that illegality.'" State v. Gonzales, 46 Wash.App. 388, 397-98, 731 P.2d 1101 (1986) (quoting State v. Byers, 88 Wash.2d 1, 8, 559 P.2d 1334 (1977), overruled in part by State v. Williams, 102 Wash.2d 733, 689 P.2d 1065 (1984)). To determine if the illegal arrest taints a statement, the court considers: (1) temporal proximity of the arrest, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of Miranda warnings. Gonzales, 46 Wash.App. at 398, 731 P.2d 1101.
Here, Mr. McCord's statements were made immediately after his arrest. Given *836 the immediacy of his statements, the illegal arrest required suppression.
Because these issues are dispositive and require reversal, we decline to address the remaining issues raised by Mr. McCord.
Reversed.
WE CONCUR: SWEENEY and KURTZ, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).