166 P.3d 848 (2007)
STATE of Washington, Respondent,
v.
Pedro Munoz GARCIA, Appellant.
No. 25349-0-III.
Court of Appeals of Washington, Division 3.
September 6, 2007.
*851 Dennis W. Morgan, Ritzville, WA, for Appellant.
David A. Jorgensen, Okanagan Prosecutor's Office, Okanogan, WA, for Respondent.
KULIK, J.
¶ 1 Police were informed by a confidential informant that Pedro Munoz Garcia was consuming drugs and providing liquor to minors in a local motel room. Mr. Munoz Garcia was convicted of first degree possession of stolen property and furnishing liquor to minors. On appeal, Mr. Munoz Garcia asserts that: (1) the trial court erred in its finding that the confidential informant was credible; (2) the record of the conversation prior to the issuance of a telephonic warrant was not properly reconstructed; (3) the "any and all persons present"[1] warrant violated the particularity requirement of the Fourth Amendment and was therefore invalid; and (4) the *852 trial court erred when it found that the plain view and consent exceptions applied in this case. We affirm.

FACTS
¶ 2 Officer Timothy Rieb of the Brewster Police Department was contacted by a confidential informant regarding possible illegal activity. According to his affidavit for the search warrant, Officer Rieb was told by the confidential informant that the informant observed drugs and underage drinking in one of the rooms at a local motel. The informant told Officer Rieb that the room was being rented to Pedro Munoz Garcia. The owner of the motel confirmed this information.
¶ 3 Officer Rieb applied for a telephonic warrant to search the motel room that was identified by the informant. Officer Rieb did not reveal the identity of the informant to the issuing magistrate. In applying for the warrant, Officer Rieb asserted that he read the affidavit to the magistrate "[v]erbatim." Report of Proceedings (RP) (May 10, 2006) at 24. Although Officer Rieb testified that the magistrate asked him questions regarding the affidavit, Officer Rieb could not recall specifically what questions were asked.
¶ 4 The magistrate then requested more information regarding the confidential informant who provided the tip to Officer Rieb. In the affidavit in support of the search warrant, Officer Rieb attested to the informant's reliability because (1) the informant provided a signed, written statement; (2) the informant was familiar with methamphetamine and cocaine based on personal experience; (3) Officer Rieb knew the informant for eight years; and (4) the informant did not have a criminal history. The signed, written statement was never provided to Mr. Munoz Garcia.
¶ 5 The conversation between Officer Rieb and the magistrate was supposed to be recorded. But the recording of the conversation failed. Therefore, no transcript of the conversation could be made. Additionally, the magistrate did not make any notes regarding this conversation. The magistrate issued the warrant. Officer Rieb prepared the warrant and signed on the magistrate's behalf. The warrant authorized the search of "any and all persons present" at the motel room. Clerk's Papers (CP) at 78.
¶ 6 Police officers went to the motel to execute the search warrant. Upon entering the motel room, the officers observed that minors were present in the room, and several smelled of alcohol. Police searched the individuals present in the room based on concerns for officer safety. Officer Rieb was also investigating a burglary of the El Campesino jewelry store at the time. They discovered some of the stolen jewelry on the people present in the motel room.
¶ 7 When they searched Mr. Munoz Garcia, police discovered a glass pipe in his pocket that contained marijuana residue. Mr. Munoz Garcia was also wearing gold jewelry that was similar to the jewelry stolen from El Campesino. Officer Rieb testified that the jewelry that was taken and the items he observed in the store were all of a similar style. Some of the rings that Mr. Munoz Garcia was wearing still had price tags on them.
¶ 8 Mr. Munoz Garcia was charged with first degree possession of stolen property, possession of a controlled substance, use of drug paraphernalia, and furnishing liquor to minors. He was taken into custody, but was not initially informed of his Miranda[2] rights. Police decided to impound Mr. Munoz Garcia's vehicle.
¶ 9 Without informing Mr. Munoz Garcia of his rights, police asked his permission to search his vehicle. According to Mr. Munoz Garcia, he was up all night during the police search and had no sleep prior to being asked for consent to search. He agreed to allow the search and signed a consent form. Police found a small amount of burnt marijuana in between the driver's and front passenger's seats of the car, small rocks of cocaine on the dashboard, and a ring that was one of the items taken in the El Campesino burglary. The ring was valued at $52. Mr. Munoz Garcia was read his rights the following day.
*853 ¶ 10 The magistrate who issued the warrant testified at the suppression hearing. Although the magistrate testified that he recalled some of the facts from the affidavit, the magistrate had no recollection of whether he asked Officer Rieb any additional questions or received any additional information.
¶ 11 The magistrate testified that Officer Rieb read the affidavit in support of the search warrant over the phone. During cross-examination, the magistrate admitted that he did not have personal knowledge of whether Officer Rieb read the affidavit verbatim. The magistrate did recall that he thought there was probable cause to issue the warrant and that he told Officer Rieb to sign the warrant on his behalf.
¶ 12 The State stipulated that the recording failed and that there was not enough information on the recording, as made, to determine whether there was probable cause to issue the warrant. Instead, the State asked the trial court to rely on the testimony of Officer Rieb and the magistrate who authorized the search warrant.
¶ 13 The trial court found that the magistrate who issued the search warrant was a disinterested party who could provide evidence regarding the basis for the search warrant. The court also considered the testimony of Officer Rieb. The trial court concluded that there was "no doubt, whatsoever that the affidavit was read verbatim" to the magistrate who issued the search warrant. RP (May 10, 2006) at 149-50. The trial court concluded that there was probable cause to support the issuance of the warrant based upon the contents of Officer Rieb's affidavit.
¶ 14 The trial court further found that several items of stolen jewelry were in plain view on Mr. Munoz Garcia when police executed the search warrant. It found that the jewelry was visibly consistent with the jewelry observed in El Campesino and the items described to Officer Rieb. Under those circumstances, the trial court concluded that the items observed were immediately recognizable to the officers as evidence of a crime.
¶ 15 Finally, the trial court found that Mr. Munoz Garcia consented to the search of his vehicle. Although the trial court expressed concern about the fact that Mr. Munoz Garcia was not read his rights, the court relied on the signed consent form as determinative of the issue.
¶ 16 The State dismissed the charges of possession of a controlled substance and use of drug paraphernalia. On stipulated facts, the trial court found Mr. Munoz Garcia guilty of the remaining charges of possession of stolen property in the first degree and furnishing liquor to minors.

ANALYSIS
CREDIBILITY OF THE CONFIDENTIAL INFORMANT
¶ 17 A magistrate's determination that a warrant should issue is given great deference by this court and is reviewed for an abuse of discretion. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995).
¶ 18 The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require that a warrant may only issue upon a determination of probable cause. State v. Vickers, 148 Wash.2d 91, 108, 59 P.3d 58 (2002). "Probable cause is established when an affidavit supporting a search warrant provides sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in criminal activity." Id.
¶ 19 This court employs the two part Aguilar-Spinelli[3] test when a confidential informant's tip is used as part of the basis to establish probable cause. Vickers, 148 Wash.2d at 112, 59 P.3d 58. Under this test, the affidavit in support of the search warrant must demonstrate both the informant's basis of knowledge and the informant's veracity. Id. at 121, 59 P.3d 58.
¶ 20 Here, Mr. Munoz Garcia does not challenge that the knowledge prong of the *854 Aguilar-Spinelli test has been met. The issue for this court is whether Officer Rieb's affidavit established the credibility of the confidential informant.
¶ 21 "The veracity prong is satisfied by showing the credibility of the informant or by establishing that the facts and circumstances surrounding the furnishing of the information support an inference the informant is telling the truth." State v. McCord, 125 Wash.App. 888, 893, 106 P.3d 832, review denied, 155 Wash.2d 1019, 124 P.3d 659 (2005). Washington requires a heightened showing of credibility for a citizen informant whose identity is known to police but not revealed to the magistrate. State v. Ibarra, 61 Wash.App. 695, 700, 812 P.2d 114 (1991).
¶ 22 Here, there was sufficient evidence of the confidential informant's veracity to support a finding of probable cause. Officer Rieb had known the informant for eight years. A background check revealed that the informant did not have a criminal record. The informant expressed concern for the community as the basis for coming forward. And, according to Officer Rieb's affidavit and testimony, the informant signed a written statement.[4]
¶ 23 Mr. Munoz Garcia asserts that there are residual doubts as to the motivation of the confidential informant, and that these doubts undermine any conclusion as to the informant's veracity. But we resolve doubt in favor of issuing the search warrant. Vickers, 148 Wash.2d at 108-09, 59 P.3d 58. Moreover, in light of the great deference this court gives to the determination of probable cause, the magistrate did not abuse his discretion in finding the confidential informant to be credible.
RECONSTRUCTED TELEPHONIC WARRANT AFFIDAVIT
¶ 24 The Washington state and the federal constitutions permit the issuance of a search warrant only upon the existence of probable cause. See, e.g., State v. Myers, 117 Wash.2d 332, 337, 815 P.2d 761 (1991). Both provisions generally require that the facts establishing probable cause for a search "be presented while under oath, to a neutral magistrate, for impartial review and that the magistrate make the crucial probable cause determination." Id.
¶ 25 The issuance of telephonic warrants is constitutionally permissible. See CrR 2.3(c). But CrR 2.3 requires some form of recording of the telephonic hearing as evidence in support of the finding of probable cause.
¶ 26 The contents of a telephonic hearing may be reconstructed under CrR 2.3, so long as the reconstruction does not impair the reviewing court's ability to determine what was considered by the magistrate in issuing the warrant. Myers, 117 Wash.2d at 343, 815 P.2d 761. If there is not a sufficient record to reveal the basis of the magistrate's probable cause determination, the proper remedy is suppression of all of the evidence seized pursuant to the search. Id. at 344, 815 P.2d 761.
¶ 27 A reconstructed record is not sufficient if the only evidence of what the magistrate considered comes from the testimony of a law enforcement officer. Id. A sworn statement may only be reconstructed by detailed and specific evidence from a disinterested party, such as the issuing magistrate. Id. at 343, 815 P.2d 761.
¶ 28 Myers and State v. Smith, 87 Wash. App. 254, 941 P.2d 691 (1997) are the primary cases in Washington that deal with the reconstruction of a telephonic probable cause hearing where the recording of the hearing has failed. In the leading case, Myers, the officer who sought and received a telephonic warrant learned the day after that the recording of the conversation with the issuing magistrate had failed. Myers, 117 Wash.2d at 335, 815 P.2d 761. The officer made a written record of his personal recollections at that time. Id. But the magistrate testified *855 that he could not personally recall the details of the conversation beyond the fact that he issued the warrant. Id. at 335-36, 815 P.2d 761.
¶ 29 In Smith, the officer seeking the warrant had made detailed notes prior to his conversation with the magistrate. Smith, 87 Wash.App. at 256, 941 P.2d 691. The officer discovered a few days after the warrant was issued that the recording of the conversation failed. Id.
¶ 30 At the reconstruction hearing, the officer testified that he read verbatim from his notes, and the content of the notes was admitted into evidence. Id. The magistrate who issued the warrant could not remember many details of the conversation, but recalled the officer reading the notes verbatim over the phone. Id. The magistrate also recalled asking the officer questions, but could not remember what questions were asked or how the officer responded. Id.
¶ 31 Both Myers and Smith concluded that the attempted reconstructions were insufficient because they were based primarily on the testimony of law enforcement officers regarding the basis for probable cause. Myers, 117 Wash.2d at 344, 815 P.2d 761; Smith, 87 Wash.App. at 260, 941 P.2d 691. Here, this court must determine whether the testimony of the issuing magistrate was sufficient to reconstruct the record.
¶ 32 Despite the shortcomings in the record, the magistrate testified that the affidavit presented and read by Officer Rieb matched his recollection of what was read to him. As such, the magistrate established with sufficient certainty that the contents of the affidavit were the basis of his finding of probable cause. While the absence of a complete record is certainly troubling, taken as a whole, the trial court nonetheless was presented with a sufficient record to reveal the basis of the magistrate's probable cause determination.
PARTICULARITY OF THE WARRANT
¶ 33 This court reviews de novo the issue of whether a warrant meets the particularity requirement of the Fourth Amendment. See State v. Clark, 143 Wash.2d 731, 753, 24 P.3d 1006 (2001).
¶ 34 The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The particularity requirement prevents magistrates from issuing general warrants that authorize an unlimited search for evidence of any crime. See State v. Stenson, 132 Wash.2d 668, 691, 940 P.2d 1239 (1997).
¶ 35 This court evaluates the search warrant in a "common sense, practical manner," rather than applying a hypertechnical standard. Id. at 692, 940 P.2d 1239. The degree of specificity required may vary with the circumstances of a particular case. Id. But the search warrant must be sufficiently definite so that the officer can identify with reasonable certainty the persons or things to be seized. Id. at 691-92, 940 P.2d 1239.
¶ 36 A warrant may be overbroad and, therefore, violate the particularity requirement if it authorizes police to search persons or seize things for which there is no probable cause. See State v. Maddox, 116 Wash.App. 796, 806, 67 P.3d 1135 (2003), aff'd, 152 Wash.2d 499, 98 P.3d 1199 (2004). To avoid overbreadth, there must be "a sufficient nexus between the targets of the search and the suspected criminal activity." State v. Carter, 79 Wash.App. 154, 158, 901 P.2d 335 (1995).
¶ 37 A generalized belief that all persons present in a location are involved in criminal activity is insufficient to establish the required nexus. Id. at 160, 901 P.2d 335. The State must demonstrate individualized probable cause. Id. (quoting State v. Rivera, 76 Wash.App. 519, 524, 888 P.2d 740 (1995)). A sufficient nexus is not established merely through evidence that some of the persons gathered in a particular location are engaged in criminal activity. Id. at 161, 901 P.2d 335.
¶ 38 Here, there is nothing to establish individualized probable cause for "any and all" of the persons who may have been *856 present in the motel room where drug activity was suspected to occur. While the police may have had generalized suspicions regarding the presence of other persons and their possible involvement, this is not sufficient to create the required nexus. The "any and all persons present" warrant in this case violated the Fourth Amendment's requirement of particularity.
¶ 39 The State argues that, even if the warrant for all persons present is invalid, the police nonetheless had the lawful authority to be present based on the search warrant. Upon discovering criminal activity inside the motel room, the police then had independent probable cause to arrest Mr. Munoz Garcia.
¶ 40 A warrant that authorizes the search of both a person and a place may be severed, and a court may uphold one portion of the warrant even if the other is later determined to be defective. State v. Halverson, 21 Wash.App. 35, 37, 584 P.2d 408 (1978). Where the portion of a warrant permitting the search of a specific location remains valid, the police are properly on the premises in the execution of the warrant. Id. Once inside, a search of the persons present is justified if there is independent probable cause based upon the observations of the officers. Id. at 37-38, 584 P.2d 408; Carter, 79 Wash.App. at 162, 901 P.2d 335; State v. Douglas S., 42 Wash.App. 138, 140-41, 709 P.2d 817 (1985).
¶ 41 In this case, Mr. Munoz Garcia was the individual who rented the motel room where illegal activity was observed. One of the officers executing the search warrant for the motel room observed Mr. Munoz Garcia wearing jewelry that the officer recognized as stolen from El Campesino. Police officers also observed intoxicated minors in the motel room. Because Mr. Munoz Garcia had dominion and control of the motel room where minors were consuming intoxicants and was seen in possession of stolen property, police had independent probable cause to arrest and search Mr. Munoz Garcia.
PLAIN VIEW/CONSENT
¶ 42 Generally, warrantless searches are considered per se unreasonable. See, e.g., State v. Reichenbach, 153 Wash.2d 126, 131, 101 P.3d 80 (2004). But there are a few narrow exceptions to the warrant requirement. Id. Here, the trial court found that two such exceptions applied to the facts and circumstances of this case: plain view and consent. Mr. Munoz Garcia challenges the trial court's conclusion that these exceptions apply.
Plain View
¶ 43 The plain view doctrine has three main elements: (1) prior justification for police intrusion; (2) inadvertent discovery; and (3) immediate knowledge by police that the material in plain view is evidence of a crime. State v. Lair, 95 Wash.2d 706, 714, 630 P.2d 427 (1981). Here, Mr. Munoz Garcia challenges only the first and third elements. He asserts that police lacked prior justification because the search warrant was defective. Mr. Munoz Garcia also claims that police did not have immediate knowledge that the jewelry in his possession was evidence of a crime. Because the warrant was valid as to the place to be searched and, therefore, the officers had the right to enter the motel room, the remaining issue for this court is whether the jewelry in Mr. Munoz Garcia's possession was immediately recognized by police as evidence.
¶ 44 Immediate knowledge is required under the plain view exception in order to prevent police from engaging in a generalized search for incriminating material. State v. Alexander, 33 Wash.App. 271, 273, 653 P.2d 1367 (1982) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "Objects are immediately apparent for purposes of a plain view seizure when, considering the surrounding facts and circumstances, the police can reasonably conclude they have evidence before them." Lair, 95 Wash.2d at 716, 630 P.2d 427. In other words, police have immediate knowledge if the officers have a reasonable belief that evidence is present. Id. This court considers both the prior information known to police and the surrounding circumstances when evaluating whether items were immediately apparent as evidence. *857 State v. Henry, 36 Wash.App. 530, 532-33, 676 P.2d 521 (1984).
¶ 45 In this case, one of the officers present for the search, Officer Rieb, was also investigating the El Campesino burglary. As part of that investigation, Officer Rieb was familiar with the particular style and descriptions of the jewelry that was taken. He recognized this jewelry on Mr. Munoz Garcia. His knowledge that this jewelry was evidence of a crime was further bolstered by the fact that at least one of the items observed on Mr. Munoz Garcia still had a price tag on it. The items in Mr. Munoz Garcia's possession were immediately apparent to Officer Rieb as evidence, considering the totality of the circumstances.
Consent
¶ 46 Consent is another exception to the warrant requirement. Reichenbach, 153 Wash.2d at 131, 101 P.3d 80. There are three elements of the consent exception. First, the consent must be voluntary. Second, the person granting consent must have the lawful authority to do so. And third, the search must not exceed the scope of the consent. Id. Mr. Munoz Garcia asserts that his consent to the search of his vehicle was not voluntary because he was not informed of his Miranda rights at the time and it is not clear that he understood the consent form that he signed.
¶ 47 The State bears the burden of proving that consent was voluntary. State v. Bustamante-Davila, 138 Wash.2d 964, 981, 983 P.2d 590 (1999). The voluntariness of consent is a question of fact based on the totality of the circumstances. Reichenbach, 153 Wash.2d at 132, 101 P.3d 80. Among the factors for the voluntariness of consent are whether Miranda warnings were given, the degree of education and intelligence of the person giving consent, and whether the consenting person was advised of the right not to consent. Id. This court may also consider the conduct of police as part of the factual analysis. Id.
¶ 48 Other factors may also be relevant depending on the totality of the circumstances. State v. O'Neill, 148 Wash.2d 564, 588-89, 62 P.3d 489 (2003). While consent may be given while an individual is under arrest, any restraint on an individual is a factor to consider. Id. at 589, 62 P.3d 489. Courts may also consider whether the individual signed a consent-to-search form, and whether any language was included within the consent form that indicated the right to refuse consent. State v. Smith, 115 Wash.2d 775, 790, 801 P.2d 975 (1990).
¶ 49 Here, there is no evidence that would indicate the degree of Mr. Munoz Garcia's education or intelligence. Mr. Munoz Garcia was not informed of his Miranda rights at the time he consented to the search. According to Mr. Munoz Garcia, he was deprived of sleep at the time he was asked for consent and was further being held in jail. All of these factors bring the voluntariness of the consent into doubt.
¶ 50 The trial court based its conclusion that consent was voluntary largely on the fact that Mr. Munoz Garcia signed a consent-to-search form. However, no single factor is dispositive in the analysis of the voluntariness of consent. Based on the totality of the circumstances in this case, the State has not met its burden of proving by clear and convincing evidence that consent was voluntary. As a result, the trial court should have suppressed the evidence obtained from the vehicle search.
¶ 51 But this court applies the harmless error test to the erroneous admission of evidence. Under this test, a constitutional error in admitting evidence is harmless if the remaining untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. State v. Hastings, 119 Wash.2d 229, 236, 830 P.2d 658 (1992).
¶ 52 In this case, police found one ring in the trunk of Mr. Munoz Garcia's car. This is the only evidence that resulted from the search of the vehicle that was relevant to the charges Mr. Munoz Garcia faced at the stipulated facts trial. The value of this ring was $52. The total value of the stolen items in Mr. Munoz-Garcia's possession was $2,729. The total value required to establish guilt of first degree possession of stolen property is $1,500. RCW 9A.56.150(1). Under the facts *858 of this case, the remaining untainted evidence overwhelmingly established Mr. Munoz Garcia's guilt of first degree possession of stolen property.
¶ 53 We affirm Mr. Munoz Garcia's convictions.
WE CONCUR: BROWN, J. and STEPHENS, J.
NOTES
[1] Clerk's Papers at 78.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), abrogated by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), but adhered to by State v. Jackson, 102 Wash.2d 432, 688 P.2d 136 (1984).
[4] We note that the written statement was never provided to the issuing magistrate or to Mr. Munoz Garcia. But, under oath, Officer Rieb told the magistrate that the confidential informant signed a written statement. As such, the existence of the signed, written statement was a factor in favor of the informant's credibility.