FILED
COURT OF APPEALS
DIVISION II

2015 JAN 13 AM 11: 16

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45132-8-II |
| Respondent, | |
| v. | |
| DAVID TALYNN PECK, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — David Peck appeals his first degree robbery conviction, claiming that the

trial court erred in denying his motion to suppress DNA (deoxyribonucleic acid) evidence and in

excluding his "other suspect" evidence. In a statement of additional grounds (SAG), Peck claims

ineffective assistance of counsel for defense counsel's failure to pursue an alibi defense and

failure to challenge the seizure of a wig containing DNA evidence introduced at trial. He also

claims that the State improperly showed a photograph of the wig to several witnesses and

improperly introduced evidence of his criminal history. We affirm.

### FACTS

On March 11, 2012, Moe Jones closed a Clark County Pizza Hut restaurant at 1:25 AM.

One of her tasks was to take the evening deposit to the bank. Elisabeth McMurray, who worked

that evening as a delivery person, was to follow Jones to the bank where Jones could make the

deposit. As Jones was getting into her car with the deposit, a man grabbed the door, stuck a gun

in her face, and said, "Give me the money." Report of Proceedings (RP) (July 1, 2013) at 40. Jones handed him the money.

McMurray, noticing that Jones was in trouble, took the Pizza Hut magnetic sign off her car and hit the man over the head with it. When Jones yelled at her that the man had a gun, McMurray ran to her car and the man ran through the bushes down a trail leading to an adjacent apartment complex.

Both Jones and McMurray described the man as a five-foot seven, 140 pound, white male wearing a black wig, sunglasses and bulky dark clothing, and carrying a black handgun. Deputies searched the area and recovered a wig in a recycling bin at the adjacent apartment complex. They also detained Ryan Stallman, who was walking in the vicinity of the Pizza Hut with his girlfriend. When the deputies took Jones and McMurray to see Stallman, they both said that Stallman was not the robber. The deputies released Stallman after verifying his alibi, taking his statement, and obtaining a DNA sample.

DNA testing of the wig revealed the presence of Peck's DNA. It also excluded Stallman as a contributor to the major DNA component on the wig. Detective Jared Stevens interviewed Peck in the Clark County Jail, where Peck was being held on an unrelated charge. Detective Stevens read Peck his *Miranda*[1] rights, asked Peck about the robbery, and requested a DNA sample to compare to the DNA found in the wig. He told Peck that submitting his DNA would be a good way to prove he was innocent. Detective Stevens also told Peck that if Peck did not

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

consent to the DNA swabbing, he would request a search warrant to obtain the sample. Peck consented.

When Detective Stevens asked Peck about the robbery, Peck denied robbing the Pizza Hut and did not know why his DNA was on the wig. Peck then said that sometimes he "[h]as too much to drink and does crazy stuff." RP (June, 21, 2013) at 21. Peck added that he had dressed up as a woman the previous Halloween and had worn a wig.

A forensic scientist with the Washington State Patrol tested the DNA samples and testified that the DNA from the wig was a mixed profile with Peck as the major contributor. She testified that because there were only trace amounts of the other contributor insufficient to profile, it was very unlikely that the other contributor was the robber, and that only one person in 2.2 quintillion would match Peck's DNA.

The State charged Peck with first degree robbery and third degree theft. In a pretrial hearing, Peck moved to suppress his statements to Detective Stevens and the DNA test results. The trial court denied both motions, finding that Peck gave his statements voluntarily and had freely consented to giving a DNA sample.

Peck sought to introduce as other suspect evidence that the deputies had stopped Stallman shortly after the robbery near the Pizza Hut restaurant. The trial court denied Peck's request.

To undermine Peck's statement to Detective Stevens that he had dressed up as a woman on Halloween, a jail records supervisor testified that Peck was in custody from 8/24/2011 to 1/4/2012 and from 10/28/2010 to 11/16/2010. And a member of the identifications unit testified that the fingerprints and photograph taken from Peck during the 8/24/2011 booking matched those taken during his current booking.

A jury found Peck guilty of both charged counts. At sentencing, Peck sought a new trial because defense counsel failed to present an alibi defense. The trial court denied the motion as untimely. Peck appeals.

## ANALYSIS

### A. MOTION TO SUPPRESS DNA EVIDENCE

Peck argues that the trial court erred in denying his motion to suppress the DNA evidence taken during his custodial interrogation with Detective Stevens. He claims that the State failed to prove that he voluntarily consented to the search. We disagree.

#### 1. Legal Principles

Swabbing a cheek to procure a DNA sample constitutes a search under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. *State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010). Such a search must be supported by a warrant unless the search meets one of the exceptions to the warrant requirement. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Consent is an exception to the warrant requirement. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004).

The State has the burden of demonstrating that a defendant's consent was voluntary. *State v. Russell*, 180 Wn.2d 860, 871, 330 P.3d 151 (2014). We consider the totality of the circumstances in evaluating the voluntariness of the consent. *Id.* In making this evaluation, we consider (1) whether *Miranda* warnings had been given prior to obtaining consent, (2) the degree of education and intelligence of the consenting person, and (3) whether the consenting person had been advised of his right not to consent. *Id.* No one factor is dispositive. *Id.* at 872.

4

We review a trial court's findings of fact following a suppression hearing for substantial evidence in the record to support them. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We treat unchallenged findings of fact as verities on appeal. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

2.    Finding of Voluntary Consent

Peck assigns error only to finding of fact 22, which provides: "Based on the totality of the circumstances the court finds that the DNA reference sample was provided voluntarily by the Defendant." Clerk's Papers (CP) at 124. But there is substantial evidence supporting this finding. First, unchallenged finding of fact 20 provides: "Deputy Stevens asked the Defendant to provide a DNA reference sample and he agreed." CP at 124. This finding supports the finding that Peck's consent was voluntary.

Second, Detective Stevens interviewed Peck in a secure room in the jail, visible to jail staff. He gave Peck the *Miranda* warnings, which Peck waived. Detective Stevens testified that he did not tell Peck that he had to give a DNA sample or make any threats or promises to get him to give a DNA sample, and that Peck agreed to give a DNA sample without any reluctance. This testimony clearly supports the trial court's finding that Peck's consent was voluntary.

Third, Detective Stevens' statement that he would seek a warrant if Peck did not agree was not coercive. *State v. Smith*, 115 Wn.2d 775, 790, 801 P.2d 975 (1990). In fact, his statement implied that Peck did not have to agree.

Peck argues that his case is akin to that in *State v. Munoz Garcia*, 140 Wn. App. 609, 166 P.3d 848 (2007). In that case, Garcia signed a written consent for officers to search his car, but the police had not read him *Miranda* warnings, he had had no sleep, and he was in custody. *Id.* at 617. The trial court relied solely on the signed consent form in finding that consent was voluntary. *Id.* at 626. Division Three of this court held that under these facts, the trial court should have reviewed the totality of the circumstances and suppressed the evidence. *Id.*

*Munoz Garcia* is inapplicable here. Peck was given *Miranda* warnings, and therefore could have invoked those rights. The trial court could have implied that he knew that he could refuse consent because he had extensive experience in the criminal justice system.

The facts show that Peck's consent was voluntary. Peck agreed to give a DNA sample without resistance when Detective Stevens requested it. Under the totality of the circumstances presented here, we hold that the trial court did not err in concluding that Peck's consent was voluntary and in denying the motion to suppress.

B.     OTHER SUSPECT EVIDENCE

Peck claims that the trial court denied him his constitutional right to present a complete defense when it excluded evidence that the deputies suspected Stallman. He argues that the evidence against Stallman was equally inculpatory as that against him. We disagree.

Before the trial court may admit "other suspect" evidence, "some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the charged crime." *State v. Franklin*, 180 Wn.2d 371, 381, 325 P.3d 159 (2014). The proper inquiry is whether the proffered evidence creates a reasonable doubt as to the defendant's guilt, not whether it establishes the guilt of the third person beyond a reasonable doubt. *Id.* at 381. We

review the exclusion of other suspect evidence under an abuse of discretion standard. *Id.* at 377 n.2.

There initially was some indication that Stallman could be connected with the robbery. Shortly after the robbery, the deputies stopped Stallman who was walking nearby with his girlfriend. Stallman was not cooperative and the deputies were forced to draw their weapons before he complied. Stallman was wearing dark clothing, carrying a black replica Officer's Model air pistol, and generally fit the description Jones and McMurray had given. The deputies took Stallman into custody, gave him *Miranda* warnings, questioned him about the robbery, and obtained a DNA sample.

But further investigation essentially eliminated Stallman as a suspect. The deputies recovered the wig in the opposite direction of where they had stopped Stallman. Stallman did not have any money even though the robbery had taken place only a few minutes earlier. The deputies brought Jones and McMurray to Stallman's location and both women said that Stallman was not the robber. Deputies confirmed Stallman and his girlfriend's alibi that they were visiting Stallman's uncle at a nearby motel when the robbery took place. And the DNA testing of the wig excluded Stallman.

We agree with the trial court that admission of this nonprobative evidence would have served only to confuse the jury because there was no nonspeculative link between Stallman and the charged crime. Evidence of the deputies' suspicions about Stallman were not enough to raise doubt about whether Peck committed the robbery. Accordingly, we hold that the trial court did not err in excluding evidence that Stallman was a suspect.

C.   SAG ISSUES

   1.   Ineffective Assistance of Counsel

Peck argues that he was denied his right to effective assistance of counsel because his attorney failed to present his alibi defense and failed to challenge the lawfulness of the deputies' seizure of the wig.  We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).  Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness.  *Id.* at 34.  Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed.  *Id.*

   a.   Alibi Defense

Peck claims that he had a sworn affidavit from an alibi witness that he was with her at the time of the robbery.  He argues that his attorney should have called her as a witness but did not even put her on the witness list.

Generally, the decision to call a witness or to present a particular defense is a tactical decision and cannot be the basis of an ineffective assistance claim.  *Grier*, 171 Wn.2d at 33.  But if the defendant can show that counsel's choice was not a legitimate tactical decision, he may prevail as long as he can show prejudice.  Here, the record is insufficient to appraise defense counsel's decision not to call this witness as it involves matters outside the record.  Therefore,

we cannot evaluate this ineffective assistance of counsel claim.[2] *See State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (reviewing court will not consider matters outside the record on appeal).

### b. Seizure of Wig

Peck next claims that defense counsel should have challenged the unlawful seizure of the wig. He claims that there was no nexus between the crime and the wig and therefore the deputies unlawfully seized it.

But defense counsel could not challenge the deputies' seizure of the wig because Peck did not have a personal privacy interest in the recycling bin where the officers found the wig. Therefore, he did not having standing to raise such a challenge. *See State v. Ague-Masters,* 138 Wn. App. 86, 99, 156 P.3d 265 (2007) (defendant lacked standing to challenge search of co-defendant). Therefore, Peck's ineffective assistance of counsel claim on this basis fails.

### 2. Photograph of Wig

Peck argues that the trial court erred in not allowing defense counsel to introduce a lineup of wigs to test the witnesses' ability to identify the wig used during the robbery. He argues that none of the witnesses identified the wig before trial and to do so with a photograph during trial denied him his right to properly impeach the witnesses. We disagree.

The admissibility of evidence rests within the trial court's sound discretion. *State v. Atsbeha,* 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). We will not reverse a trial court's

---

[2] Peck states that there was a colloquy on July 1, 2013 about presenting Dana Brixey as an alibi witness. Our review of the trial transcripts does not find any such discussion. *See* RAP 10.10(c) (defendant must identify error so that court may review it without having to search entire trial record).

decision to exclude evidence absent an abuse of discretion. *State v. Cuthbert*, 154 Wn. App. 318, 337, 225 P.3d 407 (2010).

The trial record shows that defense counsel sought to show Jones and McMurray other wigs to impeach them should they identify the wig in the photograph as the same one as the robber had worn. The State did not show Jones the photograph. During the State's examination of McMurray, it asked her if the wig shown in a photograph was similar to the one the robber had worn. McMurray said that it was because of the color and length but that she did not know if it was the same wig. Because neither witness identified the wig in the photograph as that worn during the robbery, there was no impeachment purpose to be served by introducing additional wigs. We hold that the trial court did not err in refusing to allow a lineup of wigs.

3. Criminal History

Peck argues that the State improperly introduced evidence of his criminal history even though he did not testify at trial. He claims that this propensity evidence unfairly prejudiced him and denied him his right to a fair trial. We disagree.

Peck did not object at trial to the State's evidence that Peck was in custody during Halloween of both 2010 and 2011. Absent an objection, a party waives any claim of error involving the admission of evidence. RAP 2.5(a); *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). Nonetheless, the trial court would have overruled any such objection because the State introduced this evidence to rebut Peck's statement to Detective Stevens that he had dressed up as a woman and worn a wig the previous Halloween. Further, the State did not introduce why Peck was in custody, nor did it argue that his being in custody made it more likely that he committed the robbery. Peck's claim fails.

10

45132-8-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

SUTTON, J.

11