## PEOPLE *v.* LIVERMORE.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — RETURN OF EXAMINING MAGISTRATE.

   The signature of an examining magistrate on his return to the circuit court, following preliminary examination, is a ministerial matter, and his failure to sign the return does not deprive the circuit court of jurisdiction.

2. SAME — PRELIMINARY EXAMINATION — RETURN OF MAGISTRATE — SIGNATURE.

   Claim of defendant, convicted of committing an act of gross indecency with another female, that the trial court erred in failing to grant defendant's motion to quash because the return of the examining magistrate was not signed *held*, without merit, where the return initially consisted of 2 documents, a single paper bearing his signature which stated that a crime had been committed and that there was reasonable cause to believe that defendant had committed it, and a standard printed return to the circuit court which was properly completed except for his signature, since the signing of the return by the magistrate is a ministerial act and there was no prejudice or violation of defendant's substantial rights by lack of such signature, particularly where an amended return, properly bearing his signature, was subsequently filed (CLS 1961, § 750.338a).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 440–451.
[3] 21 Am Jur 2d, Criminal Law § 450.
[4] 21 Am Jur 2d, Criminal Law §§ 446, 449, 451.
[5, 6] 5 Am Jur 2d, Arrest §§ 22–51.
[7] 5 Am Jur 2d, Arrest § 39.
[8–10] 5 Am Jur 2d, Arrest §§ 86–93.
[11, 12] 48 Am Jur, Sodomy §§ 1–8.
[13, 14] 27 Am Jur, Indictments and Informations § 176 *et seq.*
[15] 5 Am Jur 2d, Appeal and Error §§ 700, 867.
[16] 29 Am Jur 2d, Evidence § 368.
[17, 18] 53 Am Jur, Trial § 302.

3. Same—Preliminary Examination.

> An examining magistrate is directed, by statute, to bind a criminal defendant to appear before the court having jurisdiction if it appears, upon examination of the whole matter, that an offense not cognizable by a justice of the peace has been committed and there is probable cause for charging defendant therewith (CL 1948, § 766.13).

4. Same—Preliminary Examination—Sufficiency of Evidence.

> Testimony at preliminary examination which established that (1) defendant and another female were observed in close physical contact for a period of about an hour in front of a tent at a public campsite, (2) officers who were called to the scene listened outside the tent for about 10 minutes, in close proximity after defendant and the other female entered the tent, and were able to clearly overhear obscene language and conversation indicative of sexual conduct between 2 female persons, and (3) the officers, upon finally entering the tent, found defendant with another woman on a cot partially covered by a blanket, such testimony was sufficient to justify the magistrate in determining that a crime of gross indecency had been committed and that there was probable cause to believe defendant had committed it (CLS 1961, § 750.338a; CL 1948, § 766.13).

5. Arrest—Without Warrant.

> Whether an arrest was constitutionally valid depends upon whether at the moment the arrest was made, the officers had probable cause to make it, and whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to justify a prudent man in believing that the accused had committed or was committing an offense (CL 1948, § 764.15).

6. Same—Without Warrant.

> An officer, by statute, is authorized to arrest a person without a warrant when he has reasonable cause to believe that a felony has been committed and that such person committed it (CL 1948, § 764.15).

7. Same—Gross Indecency Between Females—Without Warrant.

> Defendant's arrest without warrant for committing an act of gross indecency with another female *held*, justified, where the officers who arrested her had come to the scene after receiving reasonably trustworthy information that a crime was being committed and made the arrest after listening, for approxi-

mately 10 minutes, to obscene language and conversation indicative of such sexual conduct between 2 females as to constitute an act of gross indecency, since the officers then and there had knowledge of facts and circumstances sufficient to warrant a prudent man in believing that the crime charged was being committed (CLS 1961, § 750.338a; CL 1948, § 764.15[d]).

8. SAME—SEARCH AND SEIZURE—LEGALITY OF ENTRY.
    A police officer, when justified in making an arrest without a warrant, may break open the doors of a dwelling house in order to arrest an offender concealed therein (CL 1948, § 764.15[d]).

9. SAME—SEARCH AND SEIZURE—LEGALITY OF ENTRY.
    Forced entry by police officers without a search warrant into tent where defendant and another female were committing an act of gross indecency, *held*, lawful, where such entry was made after the officers had reasonable grounds to believe that a felony was being committed and after the officers had received no response to a request that they be allowed to enter the tent, since an officer who is justified in making an arrest without a warrant may make a forced entry, if need be, to arrest an offender (CLS 1961, § 750.338a; CL 1948, § 764.15[d]).

10. SAME—EVIDENCE—PHOTOGRAPH—TESTIMONY.
    Officers who have sufficient information to believe that a felony is or has been committed and that a particular person has committed it may make an arrest without a warrant, breaking open the doors of a dwelling house, if need be, to arrest an offender therein, and both the testimony of the officers as to what they observed upon making such entry without a warrant and photographs taken by them upon such entry are admissible into evidence (CL 1948, § 764.15[d]).

11. CRIMINAL LAW—STATUTES—GROSS INDECENCY.
    It is a felony for any female person, in public or in private, to commit or be a party to the commission of, or to procure, or attempt to procure the commission by any female person of any act of gross indecency with another female person (CLS 1961, § 750.338a).

12. SAME — GROSS INDECENCY — SEARCHES AND SEIZURES — PHOTOGRAPHS—ARREST WITHOUT WARRANT.
    Testimony by police officers as to what they saw upon entering a tent where defendant and another woman were committing an act of gross indecency, and photographs taken by the officers, *held*, admissible in evidence in prosecution for committing an

act of gross indecency with another female, where the officers were justified in entering the tent and arresting defendant without a warrant because they had probable cause to believe that an act of gross indecency was being committed and that defendant was committing it (CLS 1961, § 750.338a; CL 1948, § 764.15[d]).

13. SAME—GROSS INDECENCY—PUBLIC PLACE—PRIVATE PLACE—INFORMATION—AMENDMENT.

Denial of motion to quash information against defendant charging her with committing an act of gross indecency with another female because the information charged that such act occurred in a public place, when it in fact occurred in a tent used in a public camping area, *held*, not error, where (1) the exact place of the crime, whether public or private, is not a material element of the offense, (2) no substantial rights of defendant were affected by the variance because defendant could not have been surprised or misled thereby, and (3) particularly where the motion to quash did not claim that the information was defective in substance, since had such claim been made, the prosecutor could have moved to amend (CLS 1961, § 750.338a; CL 1948, §§ 767.46, 767.76).

14. SAME—INDICTMENT OR INFORMATION—VARIANCE.

A variance of proof from an allegation in an indictment or information of the particular place where an act occurred, which allegation is not descriptive of the offense and is not required to be proved as laid in order to show the court's jurisdiction, is not material where the variance does not mislead the accused.

15. APPEAL AND ERROR—QUESTIONS REVIEWABLE—FAILURE TO CITE AUTHORITIES.

The Court of Appeals does not consider a question raised on appeal but unsupported by any authority or compelling reasons.

16. SAME—EVIDENCE—CRIMINAL LAW—IDENTIFICATION.

Assertion that the trial court committed reversible error in allowing police officers to testify in a prosecution for committing an act of gross indecency with another female person, as to words and conversations overheard outside a tent, even though they were unable to identify the words spoken by defendant, is not considered by the Court of Appeals where defendant cites no authority or compelling reason in support of her assertion of error (CLS 1961, § 750.338a).

17. CRIMINAL LAW—DIRECTED VERDICT—EVIDENCE.

 The State's evidence must be taken as true, and viewed in the light most favorable to the State, which is entitled to the benefit of every reasonable inference to be drawn from it, when passing on a motion for dismissal or nonsuit in a criminal case.

18. SAME—GROSS INDECENCY—MOTION FOR ACQUITTAL—SUFFICIENCY OF EVIDENCE.

 Denial of defendant's motion for acquittal at close of prosecution's case, in trial for committing an act of gross indecency with another female person *held*, not error, where (1) defendant and another woman were observed in close physical contact for about an hour outside the tent of the other woman in a public park, (2) officers who were called to the scene listened outside the tent for about 10 minutes, overhearing foul and obscene language and conversation indicative of sexual conduct between 2 females, and (3) the evidence indicated that, upon entry into the tent, the officers observed defendant and another woman lying on a cot partially covered by a blanket, since, on such a motion, the evidence must be viewed in the light most favorable to the State, and the evidence was sufficient to present a question for jury determination (CLS 1961, § 750.338a).

Appeal from Osceola; Peterson (William R.), J., presiding. Submitted Division 3 June 8, 1967, at Grand Rapids. (Docket No. 2,624.) Decided December 5, 1967.

Julie Livermore was convicted of committing an act of gross indecency with another female. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Clarence A. Sahlin,* Prosecuting Attorney, for the people.

*Calvin B. Talhelm,* for defendant.

HOLBROOK, P. J. Defendant, Julie Livermore, was charged with, and convicted by jury trial of, com-

mitting an act of gross indecency with another female person contrary to CLS 1961, § 750.338a (Stat Ann 1954 Rev § 28.570[1]). Defendant was sentenced to a term of 1–1/2 to 5 years in the Detroit house of correction.

The pertinent facts are as follows: On the evening of July 6, 1965, defendant visited Mrs. Carolyn French at the public camping grounds at Sunrise lake in Osceola county, Michigan. Mrs. French had been tent-camping with her 4 children at Sunrise lake for several days.

About 9 p.m. that same evening, defendant and Mrs. French were observed, by complainant Jerry Branch and others, to be in close bodily contact with each other, which continued for approximately 1 hour. The defendant and Mrs. French then entered the latter's tent.

Later, on receiving a complaint, Troopers Robert Bratschi and LeRoy Fladseth of the Michigan State police, proceeded to the Sunrise lake camping grounds. They arrived there about midnight, talked to the complainant and others and then stood within 15 feet of the French tent. Obscene language and conversation indicative of sexual conduct occurring between 2 female persons was overheard by the troopers for about 10 minutes. From the information received from complainant, the obscene language and conversation, and noises overheard, the troopers took action under the belief that a felony had been committed or was being committed at that time. They approached the tent, identified themselves as State police officers, and requested admittance; there was no reply; the troopers unzipped the outer flap, and aided by a flashlight observed a cot located directly in front of the doorway on which defendant and Mrs. French were lying, partially covered by a blanket; the 2 females were advised that they were under arrest and after

taking several flash pictures, the troopers permitted them to dress in private.

Restated, the questions raised by defendant on appeal are set forth and considered as follows:

1. *Should the trial court have granted defendant's motion to quash the information?*

Defendant's motion to quash the information, made prior to trial, alleged 2 grounds—(1) the return of the examining magistrate failed to specify the crime charged, and (2) the evidence on the preliminary examination was insufficient to establish the *corpus delicti.*

The return of the examining magistrate consisted of a single paper bearing the magistrate's signature and stating that a violation had been committed and there was reasonable cause to believe defendant to have committed the crime. Had this paper alone been the entire return, a reversal would be in order; however, a standard printed "justice's return to circuit court on examination" form accompanied the above-mentioned paper, which form was proper except for the omission of the examining magistrate's signature thereon (the name of the examining magistrate appeared in type below the signature line). Subsequent to the filing of the motion to quash, and before the trial court's ruling thereon, the oversight was corrected by the filing of another standard printed form entitled "amended justice's return to circuit court on examination" bearing the written signature of the examining magistrate.

In *People* v. *William L. Thomas* (1965), 1 Mich App 118, the failure of a prosecuting attorney to sign the information was said not to deprive a court of jurisdiction since such is a ministerial matter. Similarly the signature of an examining magistrate on his return is a ministerial matter. See *Toms* v. *Judge of Recorders' Court of Detroit* (1927), 237 Mich 413. The alleged "error" was cor-

rected by the amended return. There was no prejudice resulting to defendant nor any violation of her substantial rights.

An examining magistrate is directed by CL 1948, § 766.13 (Stat Ann 1954 Rev § 28.931) to bind a defendant to appear before the court having jurisdiction "if it shall appear * * * upon the examination of the whole matter, that an offense not cognizable by a justice of the peace has been committed." A careful reading of the preliminary examination transcript convinces us there was sufficient testimony presented to justify the examining magistrate's conclusion that the crime charged had been committed. *People* v. *Gerndt* (1928), 244 Mich 622. No reasonable and valid ground for asserting a lack of proof of *corpus delicti* has been put forth.

2. *Was there probable cause for arresting defendant without a warrant?*

Underlying this question are those of illegal and improper entry, and the admissibility of testimony and exhibits resulting from such entry.

This Court, in *People* v. *Wolfe* (1967), 5 Mich App 543, 546, dealt with "the latitude of the police in making an arrest, without warrant, based on 'prudent belief' and physical evidence visible to the world, coupled with other probative circumstances such as time of day, recognition of the suspects and like factors." Therein a guideline test was set forth at p 552 as follows:

"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—*whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.*" (Emphasis supplied.)

CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874) authorizes an arrest by police officers without a warrant under various circumstances. One of these is as follows:

"(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it."[1]

In applying the above test and statute, we conclude that there was probable cause justifying an arrest without a warrant because there were facts and circumstances known to the arresting officers which would warrant a prudent man to believe that the crime charged had been committed: the troopers had reasonably trustworthy information, and the troopers for over a period of approximately 10 minutes had overheard foul and obscene language and conversation indicative of sexual conduct between 2 females, conduct of such nature as to constitute gross indecency, a felony under the laws of the State of Michigan. These facts and circumstances were such as would permit any fair-minded man of average intelligence and judgment to believe that a felony had been or was being committed. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 220.

Having determined that the troopers were justified in arresting defendant, the legality and propriety of their entry must be considered. 6 CJS, Arrest, § 146, p 615 states in a capsule headnote as follows:

"Where a peace officer * * * is justified in making an arrest without a warrant, he may break open the doors of a dwelling house in order to arrest an offender concealed therein."

---

[1] See *People* v. *Panknin* (1966), 4 Mich App 19.

The facts, previously stated, indicated that the troopers gave notice of their presence and demanded entry. And in view of the refusal of the tent occupants (a continuing silence was the only response to the troopers' demand) the troopers were justified in entering the tent. In *People* v. *Woodward* (1922), 220 Mich 511, police officers entered a home through an unfastened door for the purpose of quelling a disturbance therein. The Michigan Supreme Court found no error and held the entry to be justified under the circumstances.

The photographs taken and testimony relating to observations of the troopers upon entry of the tent were admissible. We find no error in the trial court's denial of defendant's motion to suppress nor in the trial court's overruling of defense counsel's objections as to the admissibility of this evidence.[2]

3. *Was evidence of events occurring in a tent admissible where the charge is "having committed an act of gross indecency in a public place?"*

The applicable statute, CLS 1961, § 750.338a (Stat Ann 1954 Rev § 28.570[1]), reads in part as follows:

"Any female person who, in public or in private, commits or is a party to the commission of, or any person who procures or attempts to procure the commission by any female person of any act of gross indecency with another female person shall be guilty of a felony."

Defendant claims on appeal that since the information charges a "public place", evidence of events occurring inside the tent were inadmissible. It is her contention that the tent was being used as a

[2] 23 CJS, Criminal Law, § 852[1], pp 342–361; 32 CJS, Evidence, § 716, pp 1018–1021.

residence and therefore was a "private place" even though pitched in a public camping area.[3]

In ruling on defendant's motion to suppress, the written opinion of the trial judge stated:

"Defendants in the individual cases above have moved to suppress films and photographs taken by and the testimony of two State police officers at a tent belonging to defendant French in the public park at Sunrise lake, Osceola county, on the night of July 6, 1965. It is the contention of defendants that the photographs taken and observations made by the police officers were without their consent and the result of an unauthorized entry by the police officers into said tent which had the status of a private residence.

"The motion was made before Honorable Rupert Stephens, now deceased, and was submitted upon the basis of a transcript of testimony taken upon the preliminary examination of the defendants.

"For the purposes of argument, the court will consider the tent as the equivalent of a private residence notwithstanding its location in a public park. The question thereupon is, did the officers make a lawful entry therein upon reasonable grounds for believing that a felony had been committed within.

"It is the opinion of the writer who has succeeded to the case upon the death of Judge Stephens, that the testimony of the officers at the preliminary examination indicated an observation by them of conversations, over a period of 10 minutes during which period the officers were standing approximately 15 feet from the tent, of abnormal and unlawful conduct within the tent by 2 females. The conversations need not be described in length; sufficeth to say that they were indicative of sexual

---

[3] Although we choose not to apply the principle of "standing" (defendant's right to object) in considering this question, it appears to be relevant. *People* v. *Norwood* (1945), 312 Mich 266, 272 and cases cited therein.

conduct occurring between 2 female persons, conduct of such nature as to constitute gross indecency, a felony under the laws of the State of Michigan, and of such nature as to indicate to the average person with reasonable certainty that the female persons so speaking were engaged in such conduct. Upon hearing such conversations and upon concluding, as they did conclude and as they were justified in reasonably concluding, that the statute had been violated, they were entitled to make an entry for the purpose of making an arrest and this they did. The evidence obtained and their observations made following their lawful entry may properly be received in evidence and the motions to suppress are denied."

Defendant's motion to suppress went only to the proofs—*i.e.,* defendant did not at any time prior to trial file a motion to dismiss the information as being defective in substance. Had this been done, the prosecution could have moved for an amending of the information.[4] In any event, the exact place of the crime whether public or private is not a material element of the offense of gross indecency.[5]

The substantial rights of defendant were not affected by this variance. Defendant could not have been surprised or misled in making a defense for the "statement of expected proofs," filed by the prosecution prior to the filing of defendant's motion to suppress, asserted that the 2 females "did occupy a single cot inside of the tent." 42 CJS, Indictments and Informations, § 256, p 1276, states in part as follows:[6]

"Where an indictment [or information] alleges the particular place where an act took place, and

---

[4] CL 1948, § 767.76 (Stat Ann 1954 Rev § 28.1016). *People* v. *Kennan* (1936), 275 Mich 452.

[5] CL 1948, § 767.47 (Stat Ann 1954 Rev § 28.987).

[6] Generally, see 42 CJS, Indictments and Informations, § 254, pp 1273-1275. *People* v. *Coullard* (1927), 239 Mich 84.

such allegation is not descriptive of the offense, and is not required to be proved as laid in order to show the court's jurisdiction  *  *  *  a variance which does not mislead accused  *  *  *  is not material."

4. *Could the police officers testify as to words and conversation overheard even though unable to identify those spoken by defendant?*

Inasmuch as appellant fails to set forth any authority or compelling reasons in support of this assertion of error, consideration of the above-stated question will not be undertaken by this appellate Court. See *Mitcham v. City of Detroit* (1959), 355 Mich 182, 202, 203. Also, see 7A Callaghan, Michigan Pleading and Practice, § 55.223, p 203.

5. *Should the trial court have granted defendant's motion to dismiss for lack of sufficient evidence?*

At the close of the prosecution's case, defense counsel moved for dismissal on the ground that no legal evidence of gross indecency had been presented. The motion was denied.

In dealing with the motion for dismissal and particularly the construction and effect of State's evidence when such a motion is made we turn to 23A CJS, Criminal Law, § 1149 for light and find it stated therein as follows on p 400:

"In passing on the motion for dismissal or nonsuit, the State's evidence must be taken as true, and viewed in the light most favorable to the State, which is entitled to the benefit of every reasonable inference to be drawn therefrom."

Review of the record and disposition of the previous questions raised by appellant constrain us to conclude that the trial court properly denied defendant's motion to dismiss. We find that the

evidence presented by the prosecution was sufficient to sustain defendant's conviction.
Affirmed.

Burns and McGregor, JJ., concurred.