J-A11041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS PAUL HUDGENS | : | |
| | : | |
| Appellant | : | No. 576 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 19, 2019
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0000032-2019

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: DECEMBER 15, 2021**

Dennis Paul Hudgens (Appellant) appeals from the judgment of sentence[1] entered in the Court of Common Pleas of Clearfield County after a jury trial, at which Appellant was convicted of fifty counts of possession of child pornography and one count of criminal conspiracy.[2] Because the trial court erred in denying suppression, we reverse the suppression order and vacate the judgment of sentence. We hold that the search warrant's "all persons present" (or APP) clause was unconstitutional because the warrant

---

[1] Appellant's brief asserts that the present appeal is from denial of post-sentence motions and suppression. Appellant's Brief at 2-3. We remind counsel that the appeal arises from the judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*).

[2] 18 Pa.C.S. §§ 6312(d) and 903. Appellant was initially charged with dissemination of child pornography, 18 Pa.C.S. § 6312(c), but the Commonwealth withdrew that charge at the outset of trial.

lacked particularized facts to justify a search of "all persons present," and the

search of Appellant and his tent was improper.

The trial court provided the following summary:

The investigation began when the Pennsylvania State Police believed that they had obtained child pornography from a file sharing site; this led the police to obtain a warrant for the IP address which possessed the child pornography. Verizon shared information that the IP address was linked to the address of [the Residence], Frenchville, Pennsylvania, where [Appellant] and [a] co-defendant resided.[3] Based on that information, the Pennsylvania State Police obtained a warrant to search the property for all computer hardware and software, cell phones, tablets, and storage devices.

On December 20, 2018, the police [sent a team of six people to] execute[ ] a search warrant upon the property.[4] While police were on the property, they discovered [Appellant's] tent located roughly twenty yards from the house, between the driveway and a shed. The tent had an extension cord running to it from the house, and the officers could hear a heater running inside. Officers approached the tent and asked [Appellant] to come outside and speak with them. After [Appellant] was outside the tent, Trooper Brown cleared the tent to ensure no one else was inside. He then asked [Appellant] to speak with him in his vehicle.

---

[3] Anthony Terrizzi lived at the Residence, and Terrizzi entered a guilty plea as to over one hundred counts of charges related to the production and distribution of child pornography. *See* CP-17-CR-0000031-2019 and CP-17-CR-0000718-2019. Terrizzi has committed crimes of sexual violence in the past. *See Commonwealth v. Terrizzi*, 502 A.2d 711, 712 (Pa. Super. 1985) (remanding for guidelines departure explanation in sentence for rape and burglary). Terrizzi had lived at the Residence for two years. Appellant contends that he came to be staying in a tent in the yard at the Residence at some point in November, although the Residence's owner testified to her belief that he began staying in the tent at some point in late September. Appellant's Brief at 12-13. Appellant disputes the trial court's assertion that he lived at the Residence. *Id.* at 14.

[4] *See* N.T. Suppression, 8/5/19, at 8.

[Appellant] was patted down prior to being placed in the officer's vehicle for the interview. During the pat down, an officer felt an object in the front pants pocket of [Appellant's] pants, which [Appellant] removed for the troopers. The object, an SD card used to store media, was then retained by police. Throughout the execution of the search warrant, troopers received multiple items, which were then placed into evidence.

As a result of the search warrant, thousands of images and videos were discovered on the items found during the search. On December 21, 2018, the Pennsylvania State Police filed a complaint against [Appellant] charging him with fifty counts of possession of child pornography, one count of dissemination of child pornography, and one count of criminal use of a communication facility. [Appellant] filed an omnibus pre-trial motion on July 22, 2019. Within that motion was a request to suppress the search warrant and the search of the tent and [Appellant's] body. After argument by counsel, the motion was denied. On August 12, 2019, the Commonwealth amended the information against [Appellant] to include one count of criminal conspiracy to possess child pornography.

[Appellant] proceeded to a two day jury trial. On August 13, 2019, prior to the beginning of the trial, the Commonwealth withdrew one count of dissemination of child pornography and one count of criminal use of a communication facility. At trial, [Appellant] was found guilty of all fifty counts of possession of child pornography and one count of criminal conspiracy to possess child pornography. On November 19, 2019, following a pre-sentence investigation being completed, [the trial court] sentenced [Appellant] to an aggregate term of thirty to sixty years of incarceration. [Appellant] filed a timely post-sentence motion, which was denied after reviewing argument and briefs by counsel.

A Notice of Appeal was filed on May 29, 2020. Following [the trial court's order, Appellant timely filed a statement per Pa.R.A.P. 1925(b)] on June 22, 2020[.]

Trial Ct. Op., 12/10/20, at 1-3. Appellant filed the present timely appeal and complied with Pa.R.A.P. 1925(b).[5]

Appellant raises the following issues for our review:

I. Whether the trial court erred by denying [Appellant's] motion to suppress evidence, where police officers did not have sufficient cause to search [Appellant's] person.

   A. Whether [Appellant] was a person to be searched under the search warrant issued for the [Residence.]

   B. Whether police officers had reason to believe that criminal activity was afoot and that Appellant was armed and dangerous in performing [a] pat-down search of Appellant.

   C. Whether the Commonwealth articulated a rationale for whether the searching officer believed the micro-SD card in Appellant's pocket was a weapon or contraband.

II. Whether the trial court erred by denying [Appellant's] motion to suppress evidence, where police did not have sufficient cause to search the tent being occupied by [Appellant] as the same was beyond the scope of the search warrant.

III. Whether sufficient evidence was presented at trial to support convictions for fifty (50) counts of possession of child pornography and criminal conspiracy.

IV. Whether Appellant's convictions . . . were against the weight of the evidence.

---

[5] Appellant filed a post-sentence motion on December 2, 2019, six days after sentence was imposed. The trial court denied his motion on May 5, 2020, and Appellant filed his notice of appeal on May 29th. (The time for consideration for his motion was extended by motion pursuant to Pa.R.Crim.P. 720(B)(3)(b), and by virtue of the orders of court extending deadlines during the COVID-19 pandemic.) He filed his Statement of Matters Complained of on Appeal on June 22nd, following the June 3rd order of the trial court.

V. Whether the [trial court] erred by allowing the Commonwealth to, over defense counsel's objection, admit into evidence and publish to the jury inflammatory photographs and video containing child pornography.

VI. Whether the [trial court] erred by allowing the Commonwealth to present inflammatory evidence of Appellant's incarceration.

Appellant's Brief at 7-9 (some subheadings omitted). Because we reverse as to Appellant's motion to suppress his search, we do not reach issues three through six.

We review suppression decisions to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

## I.  The Warrant

Appellant argues that the trial court erred in denying suppression because there was not sufficient cause to search his person.[6] First, he argues that the search of his person was improper, as he was not a person to be searched under the warrant. Appellant's Brief at 24-30. He cites *Commonwealth v. Wilson*, 631 A.2d 1356, 1358 (Pa. Super. 1993), and

---

[6] Appellant also argues that police lacked sufficient cause to search the tent; we need not reach that issue, as we reverse on Appellant's argument as to probable cause to search his person. Once officers became aware that the tent was effectively a separate residence, given that the APP clause in the search warrant was faulty and did not describe the tent despite the fact that officers knew it was there prior to the warrant's execution, the proper course of events would have been to seek a warrant to search the tent.

some related cases for the proposition that "all persons present" warrants are disfavored.[7]

The Commonwealth points out that "all persons present" warrants have been upheld in situations involving narcotics sales. Commonwealth's Brief at 10-12. The Commonwealth claims that "[t]he basis of the warrant was child pornography being uploaded at the IP address associated with the residence, which creates a direct nexus between all of the people present and the probable cause for the warrant." Commonwealth's Brief at 11.

The trial court cites *Commonwealth v. Graciani*, 554 A.2d 560 (Pa. Super. 1989), for the proposition that where the type of evidence sought is easily concealed on the body, "all persons present" searches have been upheld.[8] Trial Ct. Op. at 4 (unnumbered).

---

[7] "Pennsylvania law requires that every search warrant 'name with particularity the person or place to be searched,' [and] 'all persons present warrants' are not favored." *Wilson*, 631 A.2d at 1358 (citations omitted).

[8] There is some doubt as to *Graciani*'s continued viability.

> The continued vitality of *Graciani*, however, is questionable. "By allowing 'all persons' search warrants even when it was probable that they would authorize searches of 'innocent third parties,' *Graciani* clearly abandoned the *De Simone* standard, which requires probable cause as to every person likely to be present." *Guadarrama*, 128 F.Supp.2d at 1210 (emphasis in original). Subsequent to *Graciani*, however, the Pennsylvania Superior Court returned to *De Simone*, holding that "all persons warrants" "are only permissible when the affidavit of probable cause contains sufficient facts to justify a search of everyone found on the premises." *Commonwealth v. Wilson*, 429 Pa. Super. 197, 631 A.2d 1356, 1358 (1993). In *Wilson*, although the warrant did not authorize an "all persons" search, the affidavit requested

"All persons present" warrants are "only permissible when the affidavit of probable cause contains sufficient facts to justify a search of everyone found on the premises." **Wilson**, 631 A.2d at 1358 (citation omitted). The United States Supreme Court has expressly declined to address the validity of such a warrant. **See Ybarra v. Illinois**, 444 U.S. 85, 92 n.4 (1979) ("Consequently, we need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs.").

The search warrant contained the following provision:

> I also respectfully request the authority to search any vehicle or vehicles or the body of any person or persons which are present at the time the search warrant is executed or which may arrive on the property during the course of the execution of the search warrant. This is requested due to the size and portability of many of today's storage media devices.

Application for Search Warrant, 12/19/18, at 2. The provision went on to discuss the relatively small size of data storage options (such as the micro SD

---

such a warrant. The court discussed "all persons" warrants, however, because it concluded that the affidavit was insufficient to support such a warrant in any event. Thus, the fact that an "all persons" warrant had not issued in **Wilson** does not undermine the court's discussion of such warrants.

**Church of Universal Love & Music v. Fayette Cty.**, 892 F.Supp.2d 736, 745 n.4 (W.D. Pa. 2012); **see also United States v. Guadarrama**, 128 F.Supp.2d 1202, 1209 (E.D. Wis. 2001) (noting this Court's seeming abandonment of **State v. De Simone**, 60 N.J. 319, 288 A.2d 849 (1972) in **Graciani**, and our subsequent return to the **De Simone** factors in **Wilson**.)

card at issue here) and included a photograph of an SD card, a micro SD card, a small USB drive, and a smartphone. *Id.*

"[O]ur constitution prioritizes the protection of privacy rights caused by the unreasonable search above the need to present incriminating evidence in court and to assist law enforcement efforts." *Commonwealth v. Alexander*, 243 A.3d 177, 204 (Pa. 2020) (Pennsylvania's Constitution provides broader privacy protections than its federal counterpart). Search warrants must name and describe with particularity the persons or places to be searched. Pa.R.Crim.P. 205(A)(3). "Because Pennsylvania law requires that every search warrant 'name with particularity the person or place to be searched,' . . . 'all persons present warrants' are not favored." *Wilson*, 631 A.2d at 1358 (citation omitted). APP warrants are "only permissible when the affidavit of probable cause contains sufficient facts to justify a search of everyone found on the premises." *Id.*

An early case from the Supreme Court of New Jersey provided a map for our courts' analysis of APP warrants. In *State v. De Simone*, 288 A.2d 849 (N.J. 1972), that Court upheld denial of suppression where an APP warrant for an automobile was issued in an investigation of illegal sale of lottery slips. The Court described the warrant as "in our view, unassailable" as to its demonstration of probable cause. *Id.* at 851. After pointing out the diminished expectation of privacy that applies to automobiles, *id.*, the *De Simone* court then reviewed the law of other jurisdictions on APP warrants and concluded that such warrants may support searches of unnamed parties

where "based upon probable cause to believe such person, whether driver or passenger, would be involved in the criminal operation, and that presence in the car at the place of the criminal rendezvous satisfied the requirement for specificity in the Fourth Amendment." *Id.* at 854.[9]

Although our courts initially adhered to *De Simone*'s analysis, other jurisdictions have observed some inconsistency in that adherence, as discussed *infra*.

> [T]hough generally disfavored, an "all persons present" warrant would be deemed constitutional when the totality of the circumstances established a sufficient nexus between the persons to be searched, the location, and the criminal activity suspected. In [*Commonwealth v.*] *Heidelberg*, [535 A.2d 611 (Pa. Super. 1987),] we found a sufficient nexus to justify issuance of an "all persons present" warrant based upon the fact cocaine sales had been observed between the occupant and other persons at the house within twenty-four hours of the application for the warrant, a large quantity of cocaine was believed to be kept at the house, the place to be searched was a private residence, and the crime suspected involved contraband which could easily be hidden on the body. 369 Pa. Super. at 407, 535 A.2d at 615. We reasoned that the likelihood that anyone present at the time of the execution of the warrant might be involved in the cocaine distribution or be willing to hide evidence of the operation on their person was sufficient to justify issuance of an "all persons present" warrant.

---

[9] "A majority of state and federal courts addressing the issue have followed *De Simone*'s pronouncement that an 'all persons' warrant is constitutional if the information given the issuer established probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity . . . [o]therwise stated, such a warrant is authorized only if 'the supporting affidavit establishes probable cause that evidence of illegal activity will be found upon every person likely to fall within the warrant's scope at the time of execution.'" *Church of Universal Love & Music v. Fayette Cty.*, 892 F.Supp.2d 736, 744 (W.D. Pa. 2012).

*Graciani*, 554 A.2d at 562 (some citations omitted). To summarize: four factors in *Heidelberg* justified the use of an otherwise-disfavored APP warrant. The recent (within 24 hours) cocaine sale, the suspected large quantity of cocaine, the fact that the search target was a private residence, and the fact that the contraband in question is easily concealed on one's person led the *Heidelberg* court to uphold the issuance of an APP warrant.

In *Heidelberg*, this Court observed two strains of thought on APP warrants, and elected to join the majority of jurisdictions at that point who had eschewed a blanket ban on such warrants and instead adopted a case-by-case approach, guided by an analysis of whether the terms of the warrant were "justified under the particular circumstances present when the warrant issued." *Heidelberg*, 535 A.2d at 612. "So long as there is good reason to suspect or believe that anyone present at the anticipated event will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Id.* at 613 (*quoting De Simone*, 288 A.2d at 850). "The evil of the general warrant is thereby negated." *De Simone*, 288 A.2d at 850.

In *Wilson*, cited *supra*, this Court reversed denial of suppression where police applied for an APP warrant but received a warrant without the APP clause. *Wilson*, 631 A.2d at 1358. The defendant, a Robert Wilson, was not a named "party to be searched" under the warrant, although two others with the last name Wilson were. This Court concluded that "the affidavit failed to contain facts sufficient to support the issuance of a warrant to search all

- 10 -

persons present" and therefore, in searching the defendant, "[t]he police in this case also acted beyond the authority of their warrant." *Id.* at 1358, 1359.

Other jurisdictions have similarly articulated the conditions under which the otherwise-disfavored APP warrant may be used. For instance, a recent opinion from Maryland observed that the applicable law was sparse. *Eusebio v. State*, 225 A.3d 507, 528 (Md. Ct. Spec. App. 2020) ("Maryland's appellate jurisprudence regarding all-persons-present warrants appears to be limited to *dicta* in one case . . . .") (citation omitted). The court described its approach as being informed by *De Simone*, and explained that an APP warrant is permissible where "the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person." *Id.* (citation omitted). "In short, the all-persons-present warrant withstands constitutional scrutiny because the judge who issues it makes a probable-cause determination for all persons subject to search, even if they are identifiable only 'by physical nexus to the on-going criminal event itself.'" *Id*. (citation omitted).

In 2001, when the Eastern District of Wisconsin surveyed other jurisdictions' approaches to APP warrants, it designated *De Simone* as the leading case representing the majority approach. *Guadarrama*, 128 F. Supp. 2d. 1207-08 & n.7 (surveying state and federal decisions on APP warrants). Under that approach, APP warrants comply with the Fourth Amendment "only if the supporting affidavit establishes probable cause that evidence of illegal

- 11 -

activity will be found upon **every** person likely to fall within the warrant's scope." ***Id.*** at 1207 (emphasis in original).

New York courts apply the following factors in evaluating the permissibility of APP warrants: "the character of the premises, the nature of the illegal activity believed to be conducted at the location, the number and behavior of the persons present at the time of day or night when the sought warrant was proposed to be executed, and whether persons unconnected with the illicit activity had been observed at the premises." ***People v. Mothersell***, 926 N.E.2d 1219, 1224 (N.Y. 2010) (APP warrant is faulty where its sole justification is the deponent's assertion that it is "not uncommon that persons found in the subject residence could reasonably be expected to conceal cocaine."). "The essential object of the searching examination required of the reviewing magistrate . . . is to guard against the authorization of a dragnet likely to include the innocent, a danger that would otherwise routinely be courted in issuing all-persons-present warrants." ***Id.*** (citation omitted). New York courts subject APP warrant applications to serious scrutiny to ensure that such warrants will only issue when the applicant provides "a showing of facts from which it can be inferred that it is substantially probable that any persons present at the warrant's execution will have the sought evidence of crime upon them." ***Id.*** at 1225.

Washington state courts apply the law similarly. In ***State v. Carter***, 901 P.2d 335 (Wash. Ct. App. 1995), the court found fault with an APP warrant based on an informant's report that they had been inside the location, where

they observed the sale and use of rock cocaine by numerous unknown individuals. *Id.* at 336. The court reasoned that, although the informant's account "supports the conclusion that some persons on the premises are engaged in illegal activity, it does not support the conclusion that only illegal conduct occurs on the site, and that therefore any person present is likely to be" involved in such conduct. *Id.* at 339 (citation omitted).

A recent opinion from the District Court for the Middle District of Tennessee provides a useful summary. It explains that "courts have taken two approaches to 'all persons' clauses in search warrants" and outlines those approaches as follows:

> The minority view (the "Georgia approach") was set forth by the Georgia Court of Appeals. *State v. Cochran*, 217 S.E.2d 181, 183 (Ga. Ct. App. 1975). In *Cochran*, police obtained a warrant to search for "illegal drugs and narcotics" in "automobiles, on persons and in two buildings located on the premises and curtilage … known as the Sunshine Club." *Id.* at 182. Police stopped a car leaving the club, searched a passenger of the car, and found an illegal drug. *Id.* Affirming the trial court's suppression of the evidence, the Court of Appeals stated that the warrant was a "general warrant" as applied to Cochran, violating the particularity requirement of the Fourth Amendment, because "he was neither listed by name specifically nor described generally, and no additional indicia of probable cause were provided at the scene of the search." *Id.* at 183 (*citing Willis v. State*, 177 S.E.2d 487 (Ga. Ct. App. 1970) (describing a warrant that authorizes the search of "all persons" as a void general warrant)). At least three other state courts have followed this approach. *Johantgen v. Commonwealth*, 571 S.W.2d 110, 112 (Ky. Ct. App. 1978) (holding that a warrant that allowed search of "any other person believed to be involved in the illegal use of, possession of, or trafficking in controlled substances" at a residence is an unconstitutional general warrant); *Peavy v. State*, 336 So.2d 199, 202 (Ala. Ct. Crim. App. 1976) (holding that a warrant allowing the search of "each and every person in or near said

- 13 -

mobile home" where controlled narcotics were being sold was an unconstitutional general warrant); ***Crossland v. State***, 266 P.2d 649, 651–52 (Ok. Crim. Ct. App. 1954) (holding that a warrant allowing the search of "each and every person" at a house constitutes an unconstitutional general warrant).

***United States v. Utley***, 3:17-CR-00173-1, 2018 WL 2020838, at \*2 (M.D. Tenn. May 1, 2018).

The court went on to describe ***De Simone*** as the leading case expressing the majority approach. After outlining ***De Simone***'s reasoning, the court continued:

> Multiple state jurisdictions have followed the New Jersey approach. ***See People v. Johnson***, 805 P.2d 1156, 1160 (Co. Ct. App. 1990) (search upheld based on an eight-page affidavit showing particular facts that everybody going to a residence was involved in the delivery, cooking, or buying of illegal narcotics) (collecting cases). The common thread in these cases is allegations that everyone at a location is involved in the illegal activity. For example, in ***Commonwealth v. Smith***, 348 N.E.2d 101 (Mass. 1976), the Massachusetts Supreme Court, in denying a motion to suppress when there was constant traffic of heroin buyers coming into a residence, found that it is only in "special circumstances such as those shown in the affidavit here will a search warrant aimed principally at the premises also be held to include validly the search of any person present." 348 N.E. 2d at 103. The Minnesota Supreme Court upheld a nighttime search for illegal liquor of a house that was used as an after-hours bar, finding that there "was little likelihood that anyone would be in the house but to participate in the after [ ] hours revelry." ***State v. Hinkel***, 365 N.W.2d 774, 776 (Minn. 1985).

***United States v. Utley***, 3:17-CR-00173-1, 2018 WL 2020838, at \*2 (M.D. Tenn. May 1, 2018). The ***Utley*** court went on to apply ***De Simone***, which has been adopted by the Fourth Circuit. ***Id.*** at \*3. We observe that courts following ***De Simone*** are likely to consider an APP warrant as permissible

- 14 -

where the illegal activity being investigated so permeates the location to be searched that most persons not involved in such activity would find it noxious to linger there. In the absence of such pervasive illegal activity, an APP warrant faces grim prospects under **De Simone**.[10]

If the contraband at issue here were distributed as cocaine is distributed, and if the affidavit of probable cause (or APC) documented many incidents of distribution rather than one, then this case would arguably fit within the **Heidelberg/Graciani/Abbott** line of cases following New Jersey's approach in approving APP warrants at hubs of illegal activity. There are residential buildings that are effectively surreptitious storefronts for retail drug distribution and/or use.[11] However, the internet has become the primary distribution point for the contraband at issue here, which is images of child sexual abuse ("CSA images").[12]

---

[10] In **U.S. v. Abbott**, 574 F.3d 203 (2009), the Third Circuit quoted the Supreme Court's requirement that a search "be supported by probable cause particularized with respect to that person," and held that "a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity." **Abbott**, 574 F.3d at 212.

[11] For instance, the social ubiquity of the word "crack house" speaks to the prevalence of this concept. A building so described is no longer solely or primarily a residence, though it is not uncommon for people to reside there.

[12] Although the statute (and therefore this Court) sometimes uses the word "pornography" in describing what happened here, we observe the distinction between media depicting consensual sexual behavior between adults who have also consented to creation of that media and what happened here, which is recorded abuse of children. Wishful thinking on the part of some abusers does not render it otherwise, just as wishful thinking does not transform an

Our laws' general antipathy toward APP warrants yields in discrete situations in which the APC establishes probable cause to believe that the location to be searched is effectively a manufacturing, distribution, or retail hub for narcotics sales. Where the target is a house that has been established to be effectively a narcotics store, this makes sense. The APC at issue in this matter does not establish that there was probable cause to believe any such thing of the Residence.

Rather, approximately two months prior to submission of the affidavit of probable cause, the investigating officers were "able to locate" a single upload of CSA images. Application for Search Warrant, 12/19/18, at 9. They then tracked the IP address of the computer that made the upload, and through the internet service provider, matched the IP address to a particular location: the Residence. That is not enough to establish probable cause to believe that the location is **dedicated** to the illegal activity of distributing CSA images, such that anyone present at execution of the search would almost certainly be involved in that activity.[13]

---

assault into sex. Context, and consent, matter (and of course, children cannot consent to being assaulted by adults).

[13] A more analogous scenario would be where the affidavit of probable cause established a reason to believe that CSA images were being **created** at a location to be searched. Then, it would be hard to imagine that any adult at the location could be entirely unaware of the criminal uses to which the location was put.

The trial court explains its denial of suppression by emphasizing that the evidence would likely be small and easily hidden, as in the drug cases analyzed *supra*, and then by stating the following:

> The right to search [Appellant] was requested and granted in the warrant obtained by the Pennsylvania State Police. Because the warrant was valid, the officers did not need any other sufficient cause to search [Appellant].

Trial Ct. Op. at 5 (unpaginated).[14] This is incorrect. **Ybarra** makes clear that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." **Ybarra**, 444 U.S. at 91.[15] The **Ybarra** Court goes on: "[t]his requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." **Id.**[16] Likewise,

---

[14] Likewise, the Commonwealth argues, erroneously, from the validity of the warrant: "Did the trial court properly deny Appellant's motion to suppress evidence, where [the police] searched Appellant pursuant to a valid search warrant?" Commonwealth's Brief at 1.

[15] Even in **Ybarra**, the Supreme Court acknowledged that the contraband that was the search's object, heroin, is easily hidden on one's person; the Court nevertheless concluded that individualized probable cause provides "the best compromise that has been found for accommodating the often opposing interests in safeguarding citizens from rash and unreasonable interferences with privacy and in seeking to give fair leeway for enforcing the law in the community's protection." **Id.** at 95–96 (citation, quotation marks, and brackets omitted).

[16] "The issue on appeal is not whether the search warrant was facially invalid, but whether it was supported by probable cause with respect to all persons present." **Abbott**, 574 F.3d at 212.

the Commonwealth's assertion that the single upload "creates a direct nexus between all of the people present and the probable cause for the warrant" makes no sense. Commonwealth's Brief at 11. The Commonwealth then quotes *Graciani*, describing how the nexus police established "render[ed] the **probability** of [searched parties'] culpable participation in the crime suspected sufficient to warrant a search of their person to prevent the destruction or concealment of evidence of the crime suspected." *Graciani*, 554 A.2d at 563. That is precisely what did not happen here.

Because *Ybarra* makes clear that a valid warrant does not render constitutional all searches conducted in association with the warrant's execution, we cannot endorse the trial court's reliance on the validity of the underlying warrant. Nor can its observation that one of the *Heidelberg* factors, the small size of contraband, was present render the search constitutional.[17] Even under the protections of the Fourth Amendment, our inquiry must be more particularized than that. If a valid warrant were the beginning and end of the inquiry, much of our decisional law on suppression would be unnecessary.

What do police need to do to establish a nexus between the criminal activity they have uncovered and the location to be searched, such that an APP warrant is appropriate? In *Abbott*, it was sufficient that the affiant "stated that in his experience, 'defendants [ ] frequently sell and stash

---

[17] The Residence is a private residence, and thus another factor recited in *Heidelberg* was present as well.

- 18 -

narcotics from inside a location'" in tandem with information about a series of controlled buys, in which the dealer at least once entered the house to obtain narcotics to complete the sale. **Abbott**, 574 F.3d at 204, 212.

Here, we must conclude that the trial court reached a legally incorrect conclusion, as it predicated its suppression ruling on the premise that the validity of the warrant must, perforce, render the APP clause valid as well. However, under **Ybarra**, probable cause must be particularized with respect to each person who is subjected to a search. **Ybarra**, 444 U.S. at 91.

If the APC supporting the warrant had established cause to believe that the Residence was primarily a site for the production or exchange of CSA images, the analysis would likely differ. However, it did not, nor did it attempt to, establish such a thing. Rather, it established one incident of file sharing on one connected device. This is not enough to establish "probable cause to believe [that any] person [onsite] would be involved in the criminal operation, and that presence . . . satisfied the requirement for specificity in the Fourth Amendment." **De Simone**, 288 A.2d at 854. In fact, the two-months-old, isolated single upload which forms the basis for the warrant suggests the opposite.

To conclude otherwise would undervalue the analysis of the vast majority of jurisdictions that have considered challenges to APP warrants, would constitute a major departure from our precedent (which follows **De Simone**), and would deprecate our Supreme Court's recent reminder that

Pennsylvania's Constitution provides broader privacy protections than the Fourth Amendment. *Alexander*, 243 A.3d at 204.

Neither the trial court nor the Commonwealth has advanced any alternative theory by which the search might be permitted, as both relied on the argument that because the warrant was valid as to the Residence, the APP provision must be valid and therefore any search of any person present would be valid too. Buildings do not have constitutional rights; people do. This is why the Supreme Court emphasizes particularized probable cause as to each individual who is subjected to a search of their person by law enforcement. The Commonwealth is correct in pointing out that Pennsylvania courts have upheld APP warrants where the APC establishes reasonable suspicion that the location is effectively a retail hub for drugs. *See, e.g., Commonwealth v. Johnson*, 880 A.2d 678 (Pa. Super. 2005), wherein this Court upheld denial of suppression. An APP warrant was issued where a confidential informant purchased narcotics, and observed several others using or selling narcotics, at a particular location, and other informants told police that several drug dealers used the location to sell drugs.[18] *Id.* at 681. The *Johnson* court noted that the narcotics in question are easily hidden on the body, but they

---

[18] In an apparently unrelated case also captioned *Commonwealth v. Johnson*, this Court approved denial of suppression and specified that warrants to search particular named parties are distinguishable from APP warrants. *Commonwealth v. Johnson*, 33 A.3d 122, 125 n.5 (Pa. Super. 2011) ("We note that the cases cited by Johnson in support of his claim involve 'all persons present' warrants, and as such are distinguishable and inapplicable on that basis alone.").

- 20 -

also noted that police watched the location in question in response to the informants' reports, and observed heavy traffic there. *Id.* None of these factors are present in this case save the size of the contraband.

The founders of this nation abhorred the general warrant, and took pains to prevent such a legal device from taking root in the country they created. The same is true of this Commonwealth and its founders. "[T]he historical background of Article 1, Section 8 . . . establishes that the purpose underlying Article 1, Section 8 was to protect persons from unreasonable searches and seizures conducted pursuant to general warrants." ***Commonwealth v. Waltson***, 724 A.2d 289, 291 (Pa. 1998) (citation omitted).

The constitutions of Pennsylvania and the United States must always concern us more than any one person or act, no matter how abhorrent the act or alarming the individual. Because we conclude that the police had no **particularized** cause to search Appellant, we must reverse the trial court's conclusion as to the propriety of the search.

Further, even if the warrant was appropriate as approved, it cannot justify the search of Appellant. One intercepted download or upload two months prior does not provide probable cause to search a person in a tent in a yard adjacent to where the intercepted transmission occurred, two months later. Because APP warrants are disfavored and have long been so, we will not interpret the latitude of intrusive power granted by such warrants in an overbroad manner. Our courts will not permit any warrant to be misused to allow ancillary searches unsupported by particularized probable cause.

Where, as here, there is no realistic connection between the probable cause supporting the warrant's issuance and the search in question, suppression is required.

Police testimony established that they elected to search Appellant because it was cold on the morning of December 20th, when the warrant was executed. **See** N.T. Suppression at 7, 12-14. The officers wanted to interview Appellant, and because of the cold weather, they elected to interview Appellant in a police car. Thus, officer safety dictated that Appellant be subjected to a **Terry** patdown.[19] **Id.** at 12-14.

Police executing a search warrant for drugs at a residence may not perform a patdown for weapons on anyone merely present on the premises. **In re J.V.**, 762 A.2d 376, 382 (Pa. Super. 2000) ("mere presence during the execution of a search warrant is insufficient ground, in and of itself, for a

---

[19] **See Terry v. Ohio**, 392 U.S. 1, 20 (1968); **Commonwealth v. Hicks**, 253 A.2d 276, 279 (Pa. 1969) (when conditions warrant, police may "conduct a limited search of an individual's outer clothing in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others.") (citation omitted). "To validate a **Terry** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." **Commonwealth v. Gray**, 896 A.2d 601, 606 (Pa. Super. 2006) (reversing denial of suppression where customer in a store subject to a police raid was nervous and sweating, which does not establish basis for patdown). "We reject the Commonwealth's suggestion that Gray subjected himself to a **Terry** frisk by virtue of his presence on the premises during the execution of a search warrant for drugs . . . police executing a search warrant for drugs at a residence may not perform a patdown for weapons on anyone merely present on the premises." **Id.** at 606 (citations omitted).

protective pat-down" (citations omitted)). Compare, for instance, the facts of a recent case from our Supreme Court:

> The [APC] reflects that police officers responded to an anonymous 911 call reporting shots fired in a particular apartment in Pittsburgh during the early morning hours of November 23, 2014. They approached the apartment and smelled burning marijuana coming from inside and could hear people moving. Fearing someone might be shot or injured, the officers knocked and announced their presence but received no answer for several minutes. Then, a woman answered and the officers detained her and four other individuals following a protective sweep, during which they also discovered in plain view two bricks of heroin on a shelf and three stolen firearms hidden together above a hot water tank. All five individuals were placed under arrest and, during a search incident to arrest, two cell phones each were recovered from appellant and another man. After the officers obtained a warrant to search the apartment several hours later, they executed it and discovered an additional 717 stamp bags of heroin and three more cell phones from the living room. And, on March 31, 2015, over four months after the initial search and discovery of this sizable stash of drugs and firearms in the apartment, the officers sought and obtained a search warrant for appellant's two cell phones.

***Commonwealth v. Johnson***, 240 A.3d 575, 580 (Pa. 2020). The Court reversed denial of suppression, concluding that the law requires "some specific nexus between the items to be [searched and] seized and the suspected crime committed" and "review of the [APC] reveals no such link." ***Id.*** at 587-88 (quotation and citation omitted). "Stated more plainly, where law enforcement seeks to search a person's cell phone based on the person's mere proximity to illegal contraband, some link sufficient to connect the two must be provided in the affidavit of probable cause." ***Id.*** at 587.

If police were permitted to obtain APP warrants without having documented "sufficient facts to justify a search of everyone found on the premises" then the rule of *In re J.V.* and many cases like it would be practically nullified. Just as our constitutions ought never be regarded as "technicalities," their protections cannot be circumvented simply by requesting certain magic words in the warrant application. In contrasting the facts here with those in cases where APP warrants are constitutional, we observe that there is no substitute for shoe-leather.

## II.   **The Tent**

In his second issue raised on appeal, Appellant argues that the search of his tent and the evidence recovered therefrom should have been suppressed, since the tent was not described in the warrant and the investigating officers had insufficient cause to search the tent. Appellant's Brief at 35-37. The Commonwealth concedes that "[h]ad [police] been aware of Appellant or his tent, they would have been required to list it on the search warrant." Commonwealth's Brief at 3.[20] The Commonwealth argues "during their initial surveillance of the residence, officers could not see the tent. Based on this fact, the police could not have reasonably included this additional area in their search warrant's affidavit . . . ." *Id.* at 9. In fact, police testimony established their awareness, in advance of the search, of both Appellant and

---

[20] The trial court agrees: "If the officers had known about the tent, they would have been required to list it in the property description . . .". Trial Ct. Op. at 6.

the tent in which he was residing. **See** N.T. Suppression at 9 ("Prior to going to the tent we actually got word from the corporal who was interviewing at a different location that somebody was living in the tent in the backyard.").[21]

The investigating officers initiated the tent search by "knocking" and announcing that they had a search warrant. Thus, it is plain that they were not relying on any alternative grounds for the tent search. Further, there is no indication that Appellant was present in the house when the upload that initiated this investigation was made, several months before the search.[22] There is no indication that Appellant had access to the internet, such that the IP address associated with the upload should have been associated with the tent in any way. Thus there is no nexus between the tent and the purpose of this investigation.

---

[21] It appears that Corporal Novak spoke with the landowner prior to the search. **See** N.T. Trial, 8/13/19, at 57. Another of the officers who participated in the search testified that "I believe there was information that somebody was living in the tent in the back yard, so we proceeded to go check the tent." **Id.** at 65. Corporal Novak spoke with the landowner, who was aware of Appellant's presence in the backyard tent. "I talked to her initially at the . . . police department. And then I believe later on when we went back to the residence to get [Terrizzi], I spoke to [her] again." **Id.** at 89. So the notion that police first realized there was a tent in the yard when they searched the house is simply false, as established by the testimony of several Commonwealth witnesses.

[22] Although the initial upload would not likely be considered stale, it was not particularly fresh either. **See, e.g., Commonwealth v. Hoppert**, 39 A.3d 358, 363 (Pa. Super. 2012) (warrant based on receipt of CSA images approximately six months prior to search, under the circumstances, did not render warrant stale).

Other courts have recognized that tents, where they have attributes of a dwelling, are entitled to protection against unreasonable searches and seizures. *See U.S. v. Gooch*, 6 F.3d 673 (9th Cir. 1993) (Fourth Amendment protects people rather than places, and camper who pitched a tent at a public campground had a reasonable expectation of privacy); *LaDuke v. Castillo*, 455 F. Supp. 209 (E.D. Wash. 1978) (immigration agent violated farmworker's reasonable expectation of privacy in his tent); *People v. Schafer*, 946 P.2d 938 (Colo. 1997) (reasonable expectation of privacy in a tent which he pitched on publicly accessible vacant land); *Rolling v. State*, 695 So. 2d 278 (Fla. 1997), *reh'g denied*, (June 12, 1997), *cert. denied*, 522 U.S. 984 (1997) (trespasser who pitched a tent on land owned by a public university had a reasonable expectation of privacy in the tent, though search was justified by exigent circumstances); *Kelley v. State*, 245 S.E.2d 872 (Ga. App. 1978) (court found protection against unreasonable searches and seizures applied to a tent which had attributes of a dwelling though it was pitched on land not belonging to the individuals claiming protection); *People v. Livermore*, 9 Mich. App. 47, 155 N.W.2d 711 (1967) (in "indecency" investigation of same-sex couple, their tent was the equivalent of a private residence despite being located at a public campground).[23]  Appellant was not "camping" in the

---

[23] "In most [cases where courts decline to find a privacy interest in a tent], the person who sought protection under the Fourth Amendment was a trespasser."  66 A.L.R.5th 373 (Originally published in 1999) (citations omitted).  Here, the landowner's testimony established that Appellant was not

conventional sense of the term; circumstances established by Commonwealth testimony at the suppression hearing make clear that he was **living** in the tent, just as the officers conducting the search had been forewarned. Unhoused people, too, enjoy constitutional protections, even when living in humbling circumstances. As established above, the warrant's APP clause cannot support the tent search just as it cannot support the search of Appellant's person. The Commonwealth's own acknowledgement that "if" it had known about the tent, it would have had to describe it in the warrant, combined with Commonwealth testimony that the officers conducting the search were informed, prior to the search, that a person was residing in the tent in the backyard, establish the infirmity of the tent search.[24]

Because the warrant should never have been issued with an APP clause, and because any arguable nexus between Appellant's person and the crimes under investigation was woefully insufficient, we must reverse. ***See Commonwealth v. Torres***, 177 A.3d 263, 272 (Pa. Super. 2017) (where no nexus between the crimes under investigation and search, denial of

_____

a trespasser; rather, he had permission to live in the tent in the backyard. N.T. Trial, 8/13/19, at 53-54.

[24] The tent search was conducted pursuant to the search warrant. N.T. Suppression at 16.

suppression reversed).[25] The search of his person and his abode, and any poisonous fruits thereof, must be suppressed.

Judgment of sentence vacated. Suppression order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge King Concurs in the Result.

Judge McLaughlin files a Dissenting Memorandum Statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2021

---

[25] We further note that, although Appellant had some computer equipment in his tent, he reports that prior to the search, an officer asked him if he had WiFi in the tent and he said no. N.T. Suppression at 30. The testimony was unrebutted. *Id.*